## In re PENN CENTRAL SECURITIES LITIGATION.

### No. 56.

United States District Court,
E. D. Pennsylvania.

June 21, 1976.

David Berger, P. A., pro se.

Nemser & Nemser, pro se.

Julien & Schlesinger, pro se.

Kass, Goodkind, Wechsler & Gersten, pro se.

Blum, Haimoff, Gersen, Lipson & Szabad, pro se.

Bachner, Talley & Mantell, pro se.

Lipper, Lowey & Dannenberg, pro se.

Ira Jay Sands, pro se.

Ostroff & Lawler, pro se.

Wolf, Popper, Ross, Wolf & Jones, pro se.

Brooks, Tarlton, Gilbert, Douglas & Kressler, pro se.

White, McElroy, White, Sides & Rector, pro se.

Akin, Gump, Strauss, Hauer & Feld, pro se.

Modell, Pincus, Hahn & Reich, pro se.

Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for Penn Central Transportation Co.

Farage & Shrager, Philadelphia, Pa., for Penn Central Co.

Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Broker Claimants.

## OPINION

### JOSEPH S. LORD, III, Chief Judge.

The bankruptcy of the Penn Central Transportation Company has provided no dearth of business for the courts. As a result, the financial morass into which the various Penn Central companies fell has kept occupied a significant number of lawyers. Those lawyers who have prosecuted the Penn Central Securities Litigation to settlement have now petitioned for the award of counsel fees.

### I. *Background*

Fortunately it is unnecessary for the purposes of this opinion to discuss in any detail the history of this case, most of which may be gleaned from a number of previously published opinions.[1] However, even for the limited purpose of awarding counsel fees it will be necessary to relate briefly some aspects of this litigation.

On June 21, 1970, the Penn Central Transportation Company (hereafter Transportation Company) filed a petition for reorganization pursuant to section 77 of the Bankruptcy Act, 11 U.S.C. § 205. The Transportation Company, a wholly owned subsidiary of the Penn Central Company (hereafter Holding Company), operated the railroad aspects of the business.[2] Shortly after the reorganization petition was filed, Trustees were appointed and given full authority over the assets of the debtor by the Reorganization Court.

Beginning in July of 1970, a number of suits were filed as a result of the reorganization petition. These actions alleged numerous violations of the federal securities laws[3] and state common law fiduciary obligations and were asserted as both derivative and class action claims. The activities complained of occurred from around February, 1968 to June 20, 1970. Plaintiffs were stockholders of the Holding Company. Named as defendants were various officers of the Holding and Transportation Companies, a number of auditors, accountants, banks and brokers related to the companies, and certain subsidiaries and related companies and individuals.

In 1971, the Judicial Panel on Multidistrict Litigation transferred all of the stockholder suits to us.[4] *In re Penn Central Securities Litigation,* 322 F.Supp. 1021 (Jud. Pan.Mult.Lit.1971). Because of the number of suits involved, we appointed co-liaison counsel to help in the management of the efforts of counsel in the prosecution of this coordinated litigation. David Berger, P.A. and Julien & Schlesinger were so appointed in April, 1971. Later that year the Holding Company and the Trustees for the Transportation Company sought control of the derivative actions; the Trustees asked to intervene and the Holding Company requested that it be realigned as a party plaintiff. We granted these motions.[5] Since that time the Trustees and the Holding Company have been represented by counsel and have participated as plaintiffs in this case. *See In re Penn Central Securities Litigation,* 335 F.Supp. 1026 (E.D.Pa. 1971).

---

1. 395 F.Supp. 192 (E.D.Pa.1975); 62 F.R.D. 181 (E.D.Pa.1974); 367 F.Supp. 1158 (E.D.Pa.1973); 349 F.Supp. 1029 (Jud.Pan.Mult.Lit.1972); 347 F.Supp. 1324 (E.D.Pa.1972); 347 F.Supp. 1327 (E.D.Pa.1972), *modified on rehearing,* 357 F.Supp. 869 (E.D.Pa.1973), aff'd, 494 F.2d 528 (3d Cir. 1974); 388 F.Supp. 436 (E.D.Pa.1972), *aff'd,* 484 F.2d 553 (3d Cir. 1973); 336 F.Supp. 658 (E.D.Pa.1971); 335 F.Supp. 1026 (E.D.Pa. 1971); 333 F.Supp. 382 (Jud.Pan.Mult.Lit. 1971); 322 F.Supp. 1021 (Jud.Pan.Mult.Lit. 1971).

2. A more detailed statement of the evolution of the Penn Central conglomerate may be found in *In re Penn Central Securities Litigation,* 335 F.Supp. 1026, 1030–31 (E.D.Pa.1971).

3. Among the statutes claimed to be violated were §§ 5, 11, 17(a) of the Securities Act of 1933 and §§ 9(a), 10(b), 13(a), 14(a), 16(b), 18(a) of the Securities Exchange Act of 1934.

4. Transferred were fifteen stockholder suits along with two suits by debenture holders. These actions are listed in the Appendix to the Panel's opinion. *In re Penn Central Securities Litigation,* 322 F.Supp. 1021, 1024 (Jud.Pan. Mult.Lit.1971).

5. At the same time, we dismissed the plaintiffs who had asserted derivative claims on behalf of the Holding and Transportation Companies.

In 1973 we approved the stockholders' suit for class action status. However, at that time we held that only purchasers or sellers (as opposed to holders) could assert section 10(b) and rule 10b–5 claims. We therefore dismissed the rule 10b–5 claims of those plaintiffs who had merely held their stock from February, 1968 through June 20, 1970. However, these plaintiffs were permitted to remain in this action with respect to claims asserted under section 14(a) of the Securities Exchange Act of 1934, which has no purchase or sale requirement.

The Multidistrict Panel also transferred to us as related a number of actions involving the Great Southwest Corporation (GSC). *In re Penn Central Securities Litigation,* 333 F.Supp. 382 (Jud.Pan.Mult.Lit.1971). These suits were both direct and derivative, and similarly asserted violations of the federal securities laws and of the common law. Over eighty percent of the stock of GSC was held by Pennsylvania Company (Pennco), which is a subsidiary of the Transportation Company. The GSC actions proceeded in two parts, one based upon the derivative claims, the other certified as a class action on behalf of the direct claims of the GSC minority stockholders. *In re Penn Central Securities Litigation,* 62 F.R.D. 181 (E.D.Pa.1974).

Thus, there were five distinct plaintiff entities with which defendants negotiated a "global settlement": the Holding and Transportation Companies, the Holding Company stockholders, the GSC stockholders and the GSC derivative plaintiffs. The settlement agreement was signed on December 2, 1974. The agreement provided for the payment of approximately $8.7 million to the five plaintiff entities.[6] This amount has been held in an escrow account since that time, and it is projected that at the time of distribution the fund will total approximately $10.6 million. In addition to the cash, certain defendants surrendered a number of shares of common and preferred stock of GSC and defendant Pennco agreed to waive its rights to certain accrued, but unpaid, preferred dividends of GSC. Since the plaintiff entities could not agree on the allocation of the cash fund, we were requested to make an equitable division of that fund. We decided on the following allocation:

| | |
|---|---|
| Holding Company stockholders | 37.7358% or guaranteed minimum of $4 million |
| Holding Company | 12.2642% |
| Transportation Company | 37.7358% |
| GSC stockholders | 9.4340% or guaranteed minimum of $1 million |
| GSC derivative | 2.8302% |

Notice of the settlement was mailed to all known class members and was published in the national editions of several newspapers on two separate occasions. After a hearing at which no objections were raised to the substance of the proposed settlement, we approved the two class action settlements and the GSC derivative settlement.

Ten petitions have been filed by various attorneys who participated in this lawsuit. Because a number of the petitions were filed jointly, they represent the efforts of some sixteen law firms. A summary of the petitions, including the entity represented, the amount requested, expenses and allocation is set forth below:

| Petitioner | Entity Represented | Amount Requested | Allocation | Expenses |
|---|---|---|---|---|
| David Berger, P.A.[a] | Holding Company Class | $ 800,000 + $ 180,000[b] | –Holding Company Class –Entire Fund | $36,613.87 |
| Julien & Schlesinger[c] | Holding Company Class | $ 500,000 + $ 75,000[d] | –Holding Company Class –Entire Fund | $ 9,959.09 |

---

**6.** At the same time, two bondholders' suits were settled for an additional $2 million. *See* *Dorfman v. First Boston Corp.,* 70 F.R.D. 366 (E.D.Pa. filed Feb. 6, 1976).

| Petitioner | Entity Represented | Amount Requested | Allocation | Expenses |
|---|---|---|---|---|
| Ira Sands | Holding Company Class | $ 38,000 | Holding Company Class | $ 2,345.00 |
| Ostroff & Lawler [e] | Holding Company Class | $ 100,000 | Holding Company Class | $ 1,602.59 |
| Lipper, Lowey & Dannenberg [f] | Holding Company Class | $ 28,550 | Holding Company Class | $ 1,730.78 |
| Blank, Rome, Klaus & Comisky | Transportation Company | $1,000,000 | Transportation Company | $15,062.94 |
| Brooks, Tarlton, Gilbert, Douglas & Kessler | GSC Derivative | $ 275,000 | GSC Derivative | $21,512.88 |
| White, McElroy, White, Sides & Rector | GSC Class | $ 305,715 | GSC Class | $12,385.19 |
| Akin, Gump, Strauss, Hauer & Feld [g] | GSC Class | $ 2,925 | GSC Class | $ 296.73 |
| Modell, Pincus, Hahn & Reich | | $ 75,000 + $ 255,000 | –Holding Company Class –Other four Entities | $ 5,852.08 |

[Footnotes for Chart]

**a)** Joint petition with Nemser & Nemser and H. N. Ball.

**b)** For services rendered as lead and liaison counsel.

**c)** Joint petition with Bachner, Tally & Mantell, Blum, Haimoff, Gerson, Lipson & Szabad, and Kass, Goodkind, Wechsler & Gersten.

**d)** For services rendered as lead and liaison counsel.

**e)** Joint petition with Wolf, Popper, Ross, Wolf & Jones.

**f)** Joint petition with Gerald S. Segal Law Office.

**g)** For services only in connection with claims committee.

The total fees sought from the Penn Central stockholder fund either directly or as allocated from the entire fund are approximately $1.64 million [7] which is roughly 41% of the fund. This is so in spite of the fact that the class notice of proposed settlement specifically assured the class that counsel fees would not exceed 25% of the class action fund.

The total fees sought from the GSC stockholder fund either directly or through allocation are $371,333 or about 37% of that fund.[8] Again, the class had been specifically told that the fees to be awarded would be no more than 30% of the fund. The total fees sought from the GSC derivative fund are $293,807.[9]

We held a hearing on the fee petitions. No objections were raised by any class member to the amount of the fees requested. (It should be remembered that the class notices assured ceilings of 25% and

**7.** This includes $1.54 million sought directly plus 37.7358% of the $255,000 sought from the entire fund.

**8.** In addition to the $308,640 sought directly, the GSC stockholder fund would be liable for its proportional share of those fees sought "off the top" of the entire settlement fund. This would include $24,057 from the Berger and Julien petitions and $38,636 from the Modell, Pincus, Hahn & Reich petition.

**9.** In addition to the $275,000 sought directly, the GSC derivative fund would be liable for its proportional share of those fees sought "off the top" of the entire settlement fund. This would include $7,217 from the Berger and Julien petitions and $11,590 from the Modell, Pincus, Hahn & Reich petition.

30%.) Some minor objections were raised by counsel for the various plaintiff entities; these were primarily concerned with allocation of fees, and reimbursement of certain expenses incurred during the pendency of this action. As to one of the disputed items—the Transportation Company's document depository—we held a hearing on the amount, if any, which should properly be reimbursed.

## II. The Applicable Principles—Lindy Brothers

■ The authority of a court to make an award of counsel fees and expenses from a common fund is well established. See Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Trustees v. Greenough, 105 U.S. 527, 26 L. Ed. 1157 (1882); Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973). The theory behind such an award is that when the efforts of an attorney produce a fund for the benefit of others, he or she is entitled to recover the reasonable value of services and costs of producing that fund. See Ticonic, supra, 307 U.S. at 167, 59 S.Ct. 777; Lindy, supra at 165.

The Court of Appeals in Lindy, supra, laid down the guidelines which we must apply in making an award of counsel fees. First, we must consider the hours expended by counsel in producing the fund. In doing so, we are bound to ascertain the activities which counsel engaged in during this time. In order to place a value upon these services, it is next necessary to fix a reasonable hourly rate. These rates may vary according to the type of attorney (e. g., experience, ability, qualifications, etc.) who performed the work or the nature of the services provided. The resulting sum provides

an objective starting point for making an award.

However, determining such a figure does not end the inquiry. Making hours worked the sole criteria for an award would wrongfully reward the slow and inefficient while at the same time penalizing the efficient and expeditious. See Blank v. Talley Industries, Inc., 390 F.Supp. 1, 5 (S.D.N.Y. 1975). Furthermore, this could easily result in discouraging the early settlement of cases, since attorneys may feel a need to expend a large number of hours in order to justify a fee award.[10]

■ In order to avoid unjustified reward for inefficiency and unwarranted penalty for efficiency and expedition, it is necessary to examine the quality of the work performed. Relevant to this consideration are the complexity and novelty of the issues presented, the quality of work which the court has had an opportunity to observe and the recovery obtained. In cases such as this, where the parties enter into a settlement before trial, the last factor may become the most predominant one. See Merola v. Atlantic Richfield Co., 515 F.2d 165, 168 (3d Cir. 1975); Bowman v. Combustion Engineering, Inc., Civil No. 74–1236 (E.D. Pa., filed Feb. 26, 1976).

■ The final factor which must be taken into account is the contingent nature of success. Where, as here, counsel have no guarantee of receiving fees unless they are successful in establishing a fund, additional compensation may be awarded to take this into account. We wish to make clear that the relevant issue is the contingent nature of the particular case involved, and not the risk factor in class actions generally. See Lindy, supra at 168. We mention this point only because some of the petitioners appear to hold an opposite belief.

> "Almost all of my early efforts in this litigation were performed at a time when the numerical hours devoted by counsel was [sic] considered rather an insignificant factor in favor of counsel's industry of mind."

---

10. A disturbing, and we hope isolated, example of the reaction by counsel to the present law under Lindy is presented in one of the petitions presently before us. In that petition, in explaining why the fee requested was somewhat high in relation to the number of hours worked, the attorney wrote:

## III. *Applying the Principles*

### A.

Before proceeding to a consideration of the individual petitions, there are a number of issues which are applicable generally to many or all of the petitions. Airing these here will help to reduce the overall prolixity of this opinion.

First of all, we think it necessary to recognize the conflicting policies and opposing tensions which must be faced when a court makes an award of attorney fees from a common fund. *Cf. Bailey v. Meister Brau, Inc.*, 378 F.Supp. 883, 886 (N.D.Ill.1974). On the one hand, as petitioners have so eagerly and eloquently pointed out, adequately compensating attorneys will encourage vigorous representation in class action suits of this nature. Because the individual claims of plaintiffs are often relatively small, unless counsel accept and prosecute these cases on a contingent basis, the rights of plaintiffs may never be vindicated and the blameworthy may escape scot-free. Further compounding the situation is the complexity and size of most security fraud cases, *see Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), which require that counsel be willing to invest substantial time and effort. If the courts are niggardly when the time for compensation arrives, it is obvious that the effect may be to discourage the vindication of legal wrongs.

On the other hand, as petitioners have not so anxiously pointed out, there is a certain unseemliness to attorneys' being awarded mammoth fees by the court from their own clients' recoveries. *See Blank v. Talley Industries, Inc.*, 390 F.Supp. 1, 6 (S.D.N.Y.1975). When fees become excessive they tend to overshadow the recovery of the class, which after all is the *raison d'être* for the action. *See In re Gypsum Cases*, 386 F.Supp. 959, 962 (N.D.Cal.1974). And there is simply no policy justification for awarding fees in excess of what would constitute reasonable and adequate compensation for the work performed.

The instant case amply demonstrates the lack of moderation and balance which too often occurs when attorneys seek fees in a class action. Attorneys for the Holding Company stockholders have submitted petitions seeking a total of over 40% of a $4 million fund. And this is a fund which, according to the class action notice itself, was not to be diminished by more than 25% for attorney fees. Similar instances of excessive fee requests have occurred all too frequently. *See, e. g., City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 & n. 11 (2d Cir. 1974); *In re Gypsum Cases, supra* at 962. As one of our brethren had occasion to remark in a similar situation, this "only serves to make more difficult and more distasteful the exercise of the court's discretion in the evaluation of these claims." *Id.*[11] Our obligation to the unrepresented claimants requires that we examine these petitions with care and not permit their recovery to be plundered by overgenerous and unjustified fees. See *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 341 F.Supp. 1077, 1089 (E.D.Pa.1972), *vacated on other grounds*, 487 F.2d 161 (3d Cir. 1973).

### 1. *Compensable Time*

Proceeding to the application of the *Lindy* standards to this case, we have determined that hours expended by counsel on certain classes of activity must be discounted in some cases, and completely excluded in certain others.[12]

---

11. Incidentally, we consider the policy of some of the petitioners of selective revelation of biographical information so as to make their credentials appear more impressive than they really are to be totally indefensible.

12. Because petitioners were unaware of our decision regarding discounting and exclusion of certain categories of time, many of the petitions as initially filed did not give all the information needed to do this. As a result, we requested petitioners to file supplementary affidavits with the requisite information. In a very few number of cases it was necessary for us to make some estimates concerning hours, but this involves considerably less that 1% of the total time. The petitions and supplementary

The Holding Company stockholder class was represented by at least ten separate law firms. As a result, there was a large amount of waste and duplication of effort. For example, at least ten different complaints were filed, by at least ten different law firms, all on behalf of the stockholders, all essentially the same.[13] Of course, the underlying facts were common to all Holding Company stockholders. The cause of the collapse of the Transportation Company did not vary from client to client, nor did the applicable law vary. Thus, by the very nature of the beast involved, the investigatory and research efforts of counsel had to be largely, if not totally, duplicative.[14] This conclusion is confirmed, not only by our own knowledge of the circumstances, but by the fee petitions themselves. Where the petitions do set forth exactly what was investigated, it would appear that everyone was doing essentially the same thing. If there was any unique factual investigation or legal research during this period which was a factor in producing the fund, we have not been told about it.[15] It may be that the class received some additional marginal benefit from having had multiple representation. However, it is quite certain that the benefit obtained was not of the same magnitude as the number of hours expended.

■ Where there has been duplication, and especially in a case like this which involves duplication by some ten different attorneys, it is only proper that the fee award be adjusted to reflect this. See Stanford Daily v. Zurcher, 64 F.R.D. 680,

683 (N.D.Cal.1974); City of Philadelphia v. Chas. Pfizer & Co., 345 F.Supp. 454, 484 (S.D.N.Y.1972); cf. Lindy, supra, 484 F.2d at 167.

It would be manifestly unjust to the Holding Company class to charge them ten different times in full for ten different investigations of the same facts and applicable law. We have been given nothing to show how such duplicative efforts contributed to the success of this action or the realization of the fund. On the other hand, counsel should not go totally unpaid for efforts expended. Since we have no measurement for what this compensation should be, we have no choice but to adopt an arbitrary, but to us reasonable, figure. We have concluded that all time spent in ascertaining the law and facts applicable to this suit by counsel for the Holding Company stockholder plaintiffs before April, 1971,[16] when liaison counsel were appointed, will be compensated at the flat rate of $20 per hour.[17]

■ In the same vein are efforts by petitioners to qualify its clients as class representatives. While the class action needed a class representative to proceed, there was absolutely no need for ten or more such representatives. Once again, the duplicative efforts of counsel were not of benefit to the class. Thus, all time devoted by each petitioner to its own client on the class action issue will also be compensated at a flat rate of $20 per hour. In dealing with the individual petitions we will further discount or delete all time spent by counsel solely on reading, reviewing and filing doc-

---

affidavits have been filed and are matters of public record.

13. See In re Penn Central Securities Litigation, 347 F.Supp. 1327, 1332 n. 3 (E.D.Pa.1972), aff'd, 494 F.2d 528 (3d Cir. 1974).

14. We recognize that there was some informal cooperation among counsel during the early stages of this litigation.

15. Indeed one lawyer who, by his own admission, did little more than file a complaint, review papers, and "stand and wait" for assignments from the steering committee has petitioned for a fee of $100,000.

16. We are satisfied that after this date there was sufficient supervision and coordination with respect to the investigatory processes so that duplication was minimized, though certainly not eliminated. Nevertheless, it is evident that simply as an administrative matter it was necessary for additional hours to be expended because of the number of law firms and lawyers involved in representing the plaintiffs.

17. While this figure might seem somewhat low, it should be recognized that with respect to the duplicative investigatory efforts, the class fund is being charged at the rate of $200 per hour.

uments. In determining how much to discount this time, we think it only fair to take into account how active the particular petitioner was in prosecuting this suit. Those who played a larger role had a greater need to keep up with the documents involved, while those who were essentially passive contributed nothing additional merely by reviewing documents.[18]

In addition, we have completely excluded time expended on several other categories of work. We detail these below.

■ Counsel for the Holding Company and GSC stockholder classes asserted section 10(b) and rule 10b–5 claims on behalf of both holders and purchasers or sellers of the securities involved. Defendants moved for summary judgment as to the claims asserted on behalf of holders. Relying on the *Birnbaum* doctrine, *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 464 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), we held that only purchasers or sellers could maintain their rule 10b–5 claims. *In re Penn Central Securities Litigation*, 347 F.Supp. 1327, 1333–34 (E.D.Pa.1972).[19] At the request of petitioners we held reargument on this issue, and after reconsideration, we reaffirmed our earlier decision. *In re Penn Central Securi-*

*ties Litigation*, 357 F.Supp. 869 (E.D.Pa. 1973). On appeal, the Third Circuit affirmed. *In re Penn Central Securities Litigation*, 494 F.2d 528 (3d Cir. 1974.)

In raising and litigating this claim, petitioners were seeking to recover for certain fraudulent activities practiced upon a distinct group of plaintiffs—all *holders* of Holding Company and GSC stock. Because of our rulings, petitioners were unsuccessful; nothing was recovered to compensate holders for their potential losses suffered as a result of the fraudulent activities.[20] Thus, petitioners' efforts with respect to the *Birnbaum* issue did not produce any additional funds for the benefit of the class. As counsel have pointed out in their petitions, their compensation under the "common fund" theory is wholly contingent upon successfully recovering damages. Since nothing was recovered on this issue, which was essentially a distinct and separate claim, we do not think counsel are entitled to seek compensation from a fund which was produced for the benefit of a different class of plaintiffs.[21] In short, petitioners' efforts did not benefit any class of plaintiffs. *See Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 165 (3d Cir. 1973).[22]

18. At the hearing on the fee petitions, one petitioner stated that although he did not take an active role, he felt an obligation to keep up with the case so as to protect his client and be ready to try the case if counsel for the other plaintiffs had decided that there was no case. We do not think that the unrepresented claimants should have to pay petitioner for his activities in protecting his own client's interests.

19. In 1974 we ruled similarly with respect to holders of GSC stock. *In re Penn Central Securities Litigation*, 62 F.R.D. 181, 185–87 (E.D. Pa.1974).

20. Stockholders of GSC and Holding Company who did not purchase or sell stock during the periods when rule 10b–5 violations occurred are included in the class of claimants from the respective funds. However, this is only with respect to damages suffered as a result of § 14(a) violations. This statute has no purchase or sale requirement.

21. It is true that holders will recover a small percentage of their losses, note 20 *supra*. However, it is solely for violations of § 14(a).

Petitioners' efforts on the § 14(a) violations produced this money, and they are entitled to be compensated from it. They are not entitled to compensation from it for efforts on a different, and unsuccessful, claim.

22. There are a number of cases which although not squarely on point, support our result. In *Swanson v. American Consumer Industries, Inc.*, 517 F.2d 555, 563 (7th Cir. 1975), the court stated:

"The fact that [class counsel] failed to prevail on several of the issues they raised is entitled to weight in the determination of the appropriate amount of the fee award, as conversely, an attorney's success on all or most of the important issues in a case would likewise be entitled to weight in determining his fee."

*See Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D.Cal.1974); *Bowl America Inc. v. Fair Lanes, Inc.*, 299 F.Supp. 1080, 1100 (D.Md. 1969); *cf. Merola v. Atlantic Richfield Co.*, 493 F.2d 292, 296 (3d Cir. 1974). *But cf. Locklin v. Day-Glo Color Corp.*, 429 F.2d 873, 879 (7th Cir. 1970).

We do not hold, or even mean to imply, that every motion which class action counsel lose should not be compensated. But where, as here, an essentially separate claim is raised and lost, and a significant amount of time is expended on it, counsel should not automatically be compensated for those efforts from a fund established in the same case on different grounds.

■ Another category of time which we will eliminate is that involved in the preparation of fee petitions and attendance at the fee hearing. As we explained in *Dorfman, supra,* 70 F.R.D. 366 at 374, these efforts are not ones which enure to the benefit of the class. *See Latham v. Chandler,* 406 F.Supp. 754, 757 n. 2 (N.D.Miss. 1976). *But see Stanford Daily v. Zurcher,* 64 F.R.D. 680, 683–84 (N.D.Cal.1974).[23]

■ The final claim for time which we will reject concerns efforts of counsel who represented the Holding Company stockholders with respect to certain derivative claims asserted on behalf of the Holding Company. These derivative claims were taken over by the Holding Company in 1971 and prosecuted by it. A percentage of the global settlement fund was allocated to the Holding Company for these claims. In seeking fees from the stockholder class, a number of petitioners[24] have included—we think improperly—the time spent on the derivative claims. The stockholders should not be charged for efforts which were for the benefit of an entirely different entity.[25] If these petitioners are to recover for their efforts, it would have to be from the Holding Company fund; none of them has made such a request.[26]

### 2. The Quality of Work Performed

We pass to a consideration of the quality of work performed. To the extent that there are considerations which apply only to specific petitioners, we will defer discussion until we pass on each individual petition.

■ As the Court of Appeals pointed out in *Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 168 (3d Cir. 1975), the benefit obtained is the best indicator of the quality of work performed in a case which settles before trial. The class and derivative recoveries are detailed *supra* at 5. During the course of this litigation there were a number of in-court and in-chambers proceedings which afforded us some limited opportunity to observe the quality of a few of the petitioners' work. We will reserve our comments on this for the discussion of the individual petitions.

As to the difficulty of the issues, there is no doubt that this was a massive and complex case. However, the complexity was more a result of the size of this case than the difficulty or novelty of the issues involved. While it is true that there were a few relatively novel issues which arose, *see, e. g., In re Penn Central Securities Litigation,* 338 F.Supp. 436, 438 (E.D.Pa.1972), *aff'd,* 484 F.2d 553 (3d Cir. 1973), most of counsel's efforts were directed toward discovery of the facts underlying the claim and settlement negotiations. In this respect the size of this case is reflected in the

---

**23.** This would include, *a fortiori,* any time spent by petitioners here in seeking a fee award from the *Dorfman* settlement fund. *See Dorfman, supra,* 70 F.R.D. 366 at 368–374.

**24.** We will deal separately with the request of David Berger, P. A., and Julien & Schlesinger, since they have specifically requested fees from the Holding Company recovery. *See* notes 44–53, 56 and accompanying text, *infra.*

**25.** We recognize that this might not be the case if the stockholder class and the present owners of the Holding Company stock were identical. *Cf. Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 394, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). This is clearly not the case, however.

**26.** Even if such a request had been made, we have serious doubts whether petitioners would be entitled to any such fees. No demand was ever made on the Holding Company directors to bring this suit. *See* notes 47–51 and accompanying text, *infra.* And it is by no means clear that such a demand would have been futile given the mass resignations of directors during 1970. *See In re Penn Central Securities Litigation,* 335 F.Supp. 1026, 1042 (E.D.Pa. 1971). Further, the efforts of petitioners were almost exclusively confined to including certain well-known claims in the complaints they filed.

large number of hours for which counsel seek compensation.

### 3. *The Contingency Factor*

██ The last factor to be considered is the contingent nature of success. Counsel for the two classes and the GSC derivative suit had no guarantee of payment; recovery of fees was dependent on a successful result. No criminal convictions of any of the defendants had been obtained when petitioners initiated this suit. There were, however, a number of governmental investigations into the misfeasance and malfeasance which contributed to the collapse of the Transportation Company.[27] Recognizing the danger of playing Monday-morning quarterback, we think that this was a case where liability (at least as to many of the defendants) was likely to be established. Given the extraordinary number of hours [28] devoted to this case, and the resulting fees which are sought and awarded,[29] we do not think that this is a case which requires an increase in fees because of the contingency factor.[30]

### B.

In addition to the issues related to the amount of fees to be awarded, there is the question of the source of these fees. This issue arises because defendants insisted upon a global settlement which would include the claims of all five plaintiff entities merged into one fund.

Some counsel have argued that the efforts of all counsel cannot be segregated, that this was essentially one suit with a single settlement fund being produced and therefore we should award fees to all counsel "off the top" without regard to which group each petitioner was representing.[31]

The Transportation Company Trustees object to this, and with some reason. If fees are awarded off the top, they will have to pay counsel fees over and above what they have agreed to pay private counsel whom they hired to represent themselves. The problem is particularly acute because while two of the plaintiff entities are classes, two others are private parties.[32]

██ While recognizing that there was some degree of overlap in the efforts of counsel, we think it best that each petitioner be compensated from the fund established for its own client's benefit.[33] This will mean that the Transportation and Holding Companies will not have to pay lawyers that they never engaged to represent them. Following this procedure will also obviate any necessity for a decision as to how to treat the GSC common and preferred stock which was recovered, for the purposes of awarding fees. This will also

---

**27.** *See, e. g., Staff of SEC, Special Subcomm. on Investigation of the House Comm. on Interstate and Foreign Commerce*, the Financial Collapse of the Penn Central Company (1972). Although the printing date was 1972, the substance of the investigation was revealed in testimony in 1970. *Id.* VII.

**28.** The petitioners have alleged a total of over 35,300 hours expended on this case. Lest this figure lose significance because of its sheer magnitude, it is equivalent to over 18 man-*years* of attorney work.

**29.** As the *Lindy* court pointed out, 487 F.2d at 168:

"The court may find that the contingency was so slight or the amount found to constitute reasonable compensation for the hours worked was so large a proportion of the total recovery that an increased allowance for the contingent nature of the fee would be minimal."

The total fee award in these actions, *see* p. 58–59 *infra*, confirms our decision not to increase the awards because of the contingency factor.

**30.** Further support for this conclusion may be found in the large number of attorneys who were willing to prosecute this case on a purely contingent basis. This was quite obviously not a case where counsel were reluctant to invest considerable time because of the fear that they would go unpaid.

**31.** Because so much of their recovery was non-cash (and therefore not part of the common fund) counsel for GSC were the most vociferous supporters of this plan for allocation.

**32.** The fifth entity is, of course, the GSC derivative plaintiffs.

**33.** With the exception of fees for services as liaison counsel. *See* text accompanying notes 52–53 *infra*.

recognize the reality that throughout this litigation petitioners' primary concern was—as it should have been—the interests of the entity they represented, and that the vast proportion of the benefit bestowed upon other entities was inadvertent and merely a result of representing their own clients. *See In re Gypsum Cases*, 386 F.Supp. 959, 969 n. 8 (N.D.Cal.1974).

Counsel have referred us to a passage in the Court of Appeals' *Lindy* decision, 487 F.2d at 167:

"Here, it would seem artificial to segregate the attorneys' efforts into categories as aiding clients, unrepresented claimants or the entire class. A single fund was created after negotiations on behalf of all claimants. Absent some contrary showing, we presume that all the attorneys' time contributed to the recoveries of each claimant."

An examination of *Lindy* makes clear that this passage refers to *intra*-class allocations and not the inter-class problem present here. With intra-class allocations, the causes of action, defenses, recoveries, etc. are identical. That is not the situation here. Thus we do not believe this passage suggests a result contrary to ours.

■ There is a similar dispute among the plaintiffs concerning imposition of the costs of notice to the class. Despite arguments by the Holding Company stockholders, we see no merit in their request that class notice expenses be paid for by all plaintiffs. As the Transportation Company Trustees have argued, "The fact that the Trustees' causes of action have been bound to those of the plaintiff-shareholders for pre-trial discovery and to facilitate the judicial administration of complex and protracted litigation does not provide a basis to assess plaintiff shareholders' costs against the Trustees' aliquot share." We do not think that defendants' insistence upon a global settlement detracts at all from this

argument. We hold that the costs of notice are costs solely attributable to the class action plaintiffs, and should be paid by them. *Cf. Eisen v. Carlisle & Jacquelin* (Eisen IV), 417 U.S. 156, 178–79, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

■ Another expense which has caused disagreement between some of the plaintiff entities is the document depository maintained by the Trustees of the Transportation Company. The Trustees seek $176,-197.39 [34] in compensation for the costs incurred in keeping the depository.

Despite the contentions of counsel for the Holding Company stockholders to the contrary, we feel the Trustees are entitled to compensation for those costs which are properly allocable to all plaintiff entities in this case. If the depository was of benefit to the plaintiffs, and contributed to the establishment of the settlement fund, as we find it did, then there is no reason to deny reimbursement. *Cf. Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045, 1056–58 (2d Cir. 1973).

Although there is authority for having the expense of the depository ordinarily "borne by the party who maintains the depository and who benefits by being relieved of the obligation of making multiple production of the same documents," [35] we think that inappropriate here. First of all, this is not the ordinary case. We are dealing with the allocation of expenses to just one side—the plaintiffs—rather than division between plaintiff and defendant. Secondly, the efforts of the Trustees clearly went beyond those required by the discovery rules. These additional efforts redounded to the benefit of all plaintiffs by making documents more accessible and easier to obtain.

While the Trustees' evidence on the question of allocation left something to be desired, we find that 30% of the costs as

---

**34.** At a recent hearing, the Trustees sought to amend their request by increasing it to $285,-216.66. At that time we ruled that the amendment was untimely (approximately 5½ months

late) and that we would not consider it. We adhere to that ruling.

**35.** Manual for Complex and Multidistrict Litigation § 2.5 (1970).

detailed in their motion can properly be allocated to plaintiffs in this case.[36] We will award the Trustees a total of $52,859.22 from the settlement fund for expenses incurred in the maintenance of their depository.

Finally we come to the request of a number of brokerage houses [37] for reimbursement of their costs in forwarding the class action notices to the beneficial owners of the stock involved. This is stock which the brokerage houses held in "street name."

Nothing the brokers have pointed to in their brief convinces us that the class fund should bear the costs of forwarding the documents involved. Neither trade custom nor the inapposite holding of the Supreme Court in *Eisen IV, supra* at 179 overcomes the very obvious and common sense logic that if the brokers are to be reimbursed, it should come—if at all [38]—from the individual beneficial owners involved—not the entire class. There is simply no reason to require the entire class to pay for the choice of a few to have their stock held in street name.

### IV. *Individual Petitioners*
#### *David Berger, P.A.*

Mr. Berger and his firm took a leading role in prosecuting this litigation. They were responsible for conducting a great deal of the discovery taken on behalf of the Holding Company stockholder class. In conducting strategy, discovery, pretrial, negotiation and settlement sessions, petitioner consistently played a major role and acted in a leadership capacity. There is no doubt that petitioner deserves the majority of the fees awarded from the Holding Company stockholder fund.

The petition, which has broken down the hours worked by category, reveals that a total of 292.5 hours were spent drafting the complaint and investigating the facts and law before the appointment of liaison counsel. As stated previously, we will compensate this time at the straight hourly rate of $20.

Because of the leading role played by petitioner, we will not discount time spent in reviewing papers and documents. Given the extent of its active participation, petitioner had a real need to inspect and review the papers involved.

After deleting those hours which we have already determined to be noncompensable, we have arrived at the number of compensable hours worked by each of the attorneys in petitioner's office. We list below the name of each attorney, the year of admittance to the bar,[39] a reasonable hourly rate for their services, the total number of hours worked and the value of the services. In arriving at the reasonable hourly rate we have discounted the figures presented in the petition because they are inflated. We have taken into account our knowledge of the attorneys involved, previous court decisions on the value of petitioner's time,[40]

---

**36.** In addition to plaintiffs, defendants and a number of governmental agencies made use of the document depository. Any costs incurred as a result of governmental use of the depository is a matter between the Trustees and the agencies involved. That the Trustees might be unable to collect from the agencies involved does not mean that plaintiffs should shoulder the burden. Further, we reject the Trustees' argument that the plaintiffs should pay for defendants' use of the depository. The Trustees' claim that this was implicitly understood as part of the settlement agreement borders on the frivolous.

**37.** Including Shearson Hayden Stone, Inc., Bache & Co., Inc., Drexel Burnham & Co., Inc., Loeb, Rhoades & Co., Paine Webber Jackson & Curtis Inc., and Wheat, First Securities, Inc.

**38.** We are not faced with, and do not decide, the obligation of the beneficial owner *vis a vis* the brokerage houses which held the stock in street name.

**39.** For almost every attorney involved in this litigation we have some biographical information available in the petitions. We have taken these facts into account in arriving at a reasonable hourly rate, but, in the interest of preserving trees, we will not reproduce this information here.

**40.** *See, e. g., In re Gypsum Cases, supra* at 980–81; *Entin v. Barg,* 412 F.Supp. 508 (E.D. Pa., filed April 7, 1976).

present billing practices and the fact that these services were provided over approximately a five-year span.[41]

Petitioner has also requested compensation for future work to be done in connection with settlement administration. We find

| Name | Year Admitted | Hourly Rate | Hours | Value |
|---|---|---|---|---|
| David Berger | 1938 | $125 | 1118.25 | $139,781.25 |
| Harold Berger | 1952 | 100 | 5 | 500.00 |
| Herbert Newberg | 1962 | 85 | 357.75 | 30,408.75 |
| H. Laddie Montague | 1964 | 75 | 3.50 | 262.50 |
| Warren Mulloy | 1955 | 75 | 6.25 | 468.75 |
| Leonard Barrack | 1968 | 65 | 441.25 | 28,681.25 |
| Gerald Rodos | 1971 | 65 | 2048.75 | 133,168.75 |
| Howard Schambelan | 1965 | 60 | 33.5 | 2,010.00 |
| Alan Lerner | 1966 | 60 | 11.15 | 669.00 |
| Daniel Bacine | 1971 | 45 | 4 | 180.00 |
| Bruce Cohen | 1972 | 45 | 74 | 3,330.00 |
| Warren Rubin | 1971 | 45 | 93.5 | 4,207.50 |
| Michael Simon | 1972 | 45 | 442.25 | 19,901.25 |
| Merrill Davidoff | 1973 | 40 | 47.5 | 1,900.00 |
| Paul McMahon | 1973 | 40 | 30 | 1,200.00 |
| Edward Rubenstone | 1973 | 40 | 80.25 | 3,210.00 |
| Subtotal | | | 4796.90 | 369,879.00 |
| Paralegal and Law Clerk | | 20 | 1219.65 | 24,393.00 |
| Total | | | | 394,272.00 |

petitioner's estimates of the remaining time to be somewhat excessive. It can reasonably be expected that petitioner will expend an additional 200 hours of attorney time and 200 hours of para-professional time. Given the largely ministerial duties involved, see *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 473 (2d Cir. 1974), we find a reasonable hourly rate for these hours to be $50 and $20 respectively.[42]

Adding the complaint and factual investigation compensation, total hourly compensation and compensation for future time yields a total of $414,122.00, which represents reasonable compensation for the time expended by petitioner on behalf of the Holding Company stockholder class.

■ We will increase the base compensation figure [43] by 30% to reflect the caliber of work by petitioner. In shouldering the heaviest responsibility in this case, petitioner deserves a great deal of the credit for obtaining a $4 million fund for the stockholders. Our observations of petitioner's efforts before us confirm our decision to increase the award by this percentage. Increasing the base figure of $339,414.50 by 30% results in a total award of $515,946.35 to petitioner for its representation of the Holding Company class. Petitioner should also be reimbursed for $34,713.60 in expenses.

In addition to a request for fees from the stockholder fund, petitioner seeks a total of

41. With respect to most of the attorneys involved, the hours worked were spread over the entire five-year span. However, with respect to those whose services were concentrated in a shorter span of time, at one end or the other of the time period involved, we have taken that into account in determining a reasonable hourly fee.

42. We have compensated all time spent on settlement administration up to the present at the hourly rates used for all other work. This is in part because of our sense that the work done until now was of a somewhat more difficult type and required greater attention than the work which remains.

43. This is the total compensation figure less all compensation for services in connection with settlement administration. This time is neither subject to the risks inherent in contingent type cases nor does it require a high degree of skill. See *Entin v. Barg, supra,* 412 F.Supp. 508 at p. 516 n.16. We compute this figure to be $339,-414.50.

$180,000 for services performed as (1) "sole lead" and (2) co-liaison counsel. These services are asserted to have been of benefit to all five plaintiff entities, and therefore petitioner seeks these fees "off the top."

Petitioner seeks $90,000 for services as sole lead counsel performed before the Holding Company and the Trustees of the Transportation Company were given exclusive control of the derivative actions in December of 1971. Petitioner details some 900 hours which are alleged to have been of benefit to all plaintiffs.

It is very clear, however, that nothing done by petitioner served to advance the interests of the two GSC plaintiff entities in the slightest. Petitioner represents no stockholder of GSC, and could not and did not raise any of GSC's or its stockholders' claims in its amended complaint. It is true that GSC was named as a defendant in petitioner's complaint. However, we fail to see how that, or any other work performed by petitioner during the period in question was of the slightest benefit to the two GSC plaintiff groups.[44]

■ Thus, petitioner's application boils down to a request for fees for efforts expended on the derivative actions asserted on behalf of the Holding and Transportation Companies.[45] Although the derivative actions were dismissed when the Holding Company was realigned and the Transportation Company permitted to intervene, it

nevertheless appears that we have the power to award fees to petitioner if its efforts were a substantial factor in the final recovery. See Blau v. Rayette-Faberge, Inc., 389 F.2d 469 (2d Cir. 1968); Gilson v. Chock Full O'Nuts Corp., 331 F.2d 107 (2d Cir. 1964); Dottenheim v. Emerson Electric Manufacturing Co., 7 F.R.D. 195 (E.D.N.Y. 1947).

In Blau, for example, the Second Circuit permitted the recovery of fees by an attorney who had written to a company informing it of a cause of action under section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), and demanding that suit be instituted to recover short-swing profits. This recovery was allowed even though the attorney never actually brought a derivative action because the company was able to recover the ill-gotten profits without resort to the courts.

The Holding Company through its attorneys has specifically stated that it has no objection to petitioner's fee request[46] for these services and we will thus award petitioner a proportionate share of its request from the Holding Company's recovery.

■ We will, however, deny the request for fees from the Trustees' recovery. Implicit in the reasoning of the Blau[47] court was that the attorney seeking fees from a company for discovering a section 16(b) violation make a demand on the company to bring suit before taking any steps to institute an action.[48] In opposing the Trustees'

---

**44.** Indeed, the GSC actions were not transferred here from Texas until November, 1971, several months after the appointment of liaison counsel. In re Penn Central Securities Litigation, 333 F.Supp. 382 (Jud.Pan.Mult.Lit.1971).

**45.** None of the efforts as sole lead counsel detailed by petitioner were for the benefit of the Holding Company class. All time expended on their behalf is detailed in petitioner's primary fee request for $800,000 from the stockholder fund.

**46.** Given the present relationship between petitioner and the Holding Company (petitioner is representing the latter in other litigation before us), we do not ascribe any weight to the Holding Company's approval of these fees in con-

sidering the propriety of awarding petitioner fees from the Trustees.

**47.** Blau dealt with attorney fees for a cause of action arising out of § 16(b) of the Securities Exchange Act of 1934. With respect to the pendent and derivative state law claims, it would appear that in Pennsylvania, absent a demand on the directors to bring suit or demonstration that the demand would have been useless, attorney fees may not be recovered for a derivative action. See Evans v. Diamond Alkali Co., 315 Pa. 335, 172 A. 678 (1934).

**48.** In fact, in Blau the court denied the discovering attorney fees for drafting a complaint because the work was done before the corpora-

intervention petitioner stated that it had purported to bring a double derivative[49] action on behalf of the Transportation Company. However, no demand was ever made on the Trustees[50] to bring this action nor was it alleged or shown that such a demand would have been futile.[51] In the absence of one of these conditions being met, petitioner is not entitled to any fees from any fund which may be recovered. Otherwise corporations would become liable for duplicate attorney fees for work that is essentially gratuitous and voluntary. *Blau, supra* at 473–74; *Evans v. Diamond Alkali Co.,* 315 Pa. 335, 341, 172 A. 678, 680–81 (1934).

While we think that this fact alone is sufficient to justify denial of petitioner's request, there are a number of other considerations which reinforce our conclusion. As we pointed out when the Trustees sought to intervene, there was a "glaring defect" in petitioner's derivative suit on behalf of the Transportation Company—the absence of the company as a party to the suit. Without it as a party, the action would lack an indispensable party and could not go forward. *In re Penn Central Securities Litigation,* 335 F.Supp. 1026, 1038 (E.D.Pa.1971). The Trustees made their motion to intervene in this action at a very early stage: although the amended complaint had been filed for six months, discovery had begun only one month before. From the time we allowed them to intervene, the Trustees through their counsel have played an active and major role in this suit. Finally, many of the services for which petitioner is seek-

ing a fee simply were of no benefit to the Trustees. Petitioner's efforts in opposing the Trustees' intervention, for example, certainly were of no value to them. In its supplementary affidavit petitioner refers to its work in opposing the motion of Cornelius Dorsey for a more definite statement. It does not mention that Cornelius Dorsey was not one of the defendants who entered into this settlement. Thus this work had no part in producing the present fund.

We think petitioner's request for fees for work performed as co-liaison counsel stands on more solid footing. On April 7, 1971 petitioner was appointed co-liaison counsel in all cases. Pursuant to this appointment, petitioner assumed much of the burden of coordinating efforts of counsel during the litigation. Petitioner established a document depository at its offices and kept copies of all documents available for the use of all plaintiffs' counsel. Suffice it to say that petitioner provided significant additional services which were of benefit to all five plaintiff entities, and they should bear the cost thereof. *See In re Gypsum Cases, supra* at 966–67. However, some of the work performed by petitioner was not nearly as significant as it would have us believe; also some of the work was essentially ministerial. Consequently we will compensate petitioner for its efforts as liaison counsel at the reduced rate of $50 per hour[52] for all liaison time. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 473 (2d Cir. 1974). Since petitioner details a

tion was obligated to make a decision whether to file its own action.

49. Any derivative action on behalf of the Transportation Company brought by stockholders of the Holding Company would have been double derivative because the Holding Company owned all of the stock of the Transportation Company. *In re Penn Central Securities Litigation,* 335 F.Supp. 1026, 1036 n. 3 (E.D.Pa.1971).

50. When a corporation is in reorganization, the demand requirement is satisfied by making a request of the trustees. *In re Penn Central Securities Litigation,* 335 F.Supp. 1026, 1039 (E.D.Pa.1971).

51. In retrospect it is safe to say that such a demand would not have been futile. The Trustees who took control of the Transportation Company's assets in July of 1970 were wholly independent of the previous officers and directors. Furthermore, the Trustees' intervention and active participation belies any reluctance on their part to bring this action.

52. If petitioner was compensated at the hourly rates we used for other work, the average hourly compensation for work as liaison counsel would be $75.59.

total of 683.5 attorney hours[53] and 135 hours of para-professional time, a total of $36,875 will be awarded from the entire $10.6 million fund.

### Nemser & Nemser

Filing a joint petition with David Berger, P. A. is the law firm of Nemser & Nemser in New York. The Nemser firm has requested only $50,000 in fees even though its petition details a total of 1,319.5 hours expended in this litigation. While a number of these hours would be deleted and/or discounted, we are satisfied that petitioner's request for $50,000 is still quite moderate and certainly less than they would be entitled to based on a reasonable rate for all compensable hours. We will grant petitioner's fee request for $50,000 along with $1,900.27 in expenses.

### Julien & Schlesinger

Petitioner, along with three other New York law firms, seeks $500,000 in counsel fees from the stockholder class. Petitioner also seeks fees for work as co-liaison and sole lead counsel.

Petitioner has detailed a total of 205 hours spent on investigation and drafting the complaint before appointment of liaison counsel and qualifying their client as class representative. From this, 28 hours should be deleted, as they are allocable to the derivative actions and are, therefore, noncompensable. This leaves 177 hours to be compensated at $20 per hour.

In addition to the above, petitioner lists hours expended by each of four attorneys in certain broad categories. We have eliminated those hours in the petition which, as already discussed, are noncompensable.[54] In addition, we have discounted a relatively minor number of hours for unnecessary review of documents. We recognize that petitioner took a number of depositions during the discovery phase of this litigation. While the number of hours claimed seems quite high, in view of the magnitude and scope of the areas of examination, we are not constrained to make any reduction, save in one area. Petitioner avers: "In addition, an attorney from [petitioner's] firm was present at almost all of the other depositions taken by other counsel in this matter." We can see no basis for compensating petitioner for mere attendance, without participation, at depositions. Since petitioner has not seen fit to enlighten us as to which of the hours claimed were for actual participation, we can only hypothesize. It appears to us most reasonable that the attending attorney was David Jaroslawicz. We will reduce his claimed time by 125 hours.[55] We find the total number of compensable hours, and reasonable hourly rates therefor to be:

---

53. Petitioner has in its supplementary affidavit included time worked by Alan Lerner in detailing efforts as liaison counsel. Mr. Lerner had no association with petitioner after 1970, and since petitioner was not appointed liaison counsel until April, 1971, Lerner could not have provided any services as liaison counsel. This error may well be because petitioner rarely kept time records before April, 1972. *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 382 F.Supp. 999, 1011 (E.D.Pa.1974). If in fact this is so, we are surprised that petitioner has nowhere indicated in its petition that time detailed before that date was estimated. A failure to keep time records is a relevant factor for the court's decision on attorney fees. *See Blank v. Talley Industries, Inc.,* 390 F.Supp. 1, 4 (S.D.N.Y. 1975).

54. We have also excluded certain miscellaneous time claimed by petitioner. In the absence of adequate documentation as to what the time was spent on, we think petitioner is not entitled to compensation. *Arenson v. Board of Trade,* 372 F.Supp. 1349, 1355 n. 6 (N.D.Ill.1974); *cf. Dorfman v. First Boston Corp., supra,* 70 F.R.D. 366 at 374.

55. *See* note 66 *infra.*

| Name | Year Admitted | Hourly Rate | Hours | Value |
|------|---------------|-------------|-------|-------|
| Alfred Julien | 1933 | $100 | 411 | $ 41,100.00 |
| Stuart Schlesinger | 1965 | 75 | 605 | 45,375.00 |
| Jesse Epstein | 1967 | 55 | 129.5 | 7,122.50 |
| David Jaroslawicz | 1972 | 40 | 612 | 24,480.00 |
| Paralegal | | 20 | 47 | 940.00 |
| Total | | | | $119,017.50 |

With respect to petitioner's request for fees as sole lead counsel, we deny this for much the same reasons that we denied the Berger request. However, in the present case it is even more clear that nothing petitioner did was of benefit to any of the other four plaintiff entities. To the extent that petitioner is entitled to compensation for these efforts from the Holding Company stockholder class, we have included them in the hours listed above.

Petitioner also seeks fees for work as co-liaison counsel in New York. As with the Berger petition we will compensate this time at a flat rate of $50 per hour.[56] Petitioner claims 692 hours of work as liaison counsel; this amounts to $34,600. However, in light of the actual services performed by petitioner, we find this sum excessive. A figure of $25,000 is far more reasonable, while still generously compensating petitioner for these efforts. Despite petitioner's claims, this sum should come from the stockholder fund. Petitioner was co-liaison counsel for attorneys in New York. All New York counsel represented only the Holding Company stockholders.

We are unable to see how any of the liaison efforts were for the benefit of the other plaintiff entities.

We find the resulting total, $147,557.50, to constitute reasonable and adequate compensation and we will not make any adjustment. Petitioner also seeks $6,652.49 in expenses for which it will be reimbursed.

### Kass, Goodkind, Wechsler & Gersten

One of the joint petitioners with the Julien firm is Kass, Goodkind, Wechsler & Gersten which filed the complaint in *Goodkind v. Penn Central Company.*

The vast majority of this petitioner's time was spent before the appointment of liaison counsel. Such efforts primarily consisted of investigation and drafting of a complaint and amended complaint. Little affirmative work was done after liaison counsel were appointed except for attendance at several meetings. Accordingly, we will not compensate petitioner for time spent in reviewing and analyzing documents since there was really no need for this.

Petitioner is entitled to compensation for drafting a complaint, investigating facts, working to qualify its client as a class representative, and answering defendant's interrogatories addressed to its client. The petition reveals a total of 117 hours so spent, and this will be compensated at the $20 per hour rate.

In addition, petitioner has 132 hours for which it is entitled to be paid. Unfortunately, although petitioner has detailed the total number of hours each attorney spent on this case, it has not broken down each category, but only given the total number of attorney hours for each.

In order properly to compensate petitioner for these hours, we will assume that the ratio of hours spent by each attorney for petitioner for the 132 compensable hours is the same as the ratio of hours spent by each attorney on the entire case.[57] Since we know the latter ratio, we will be able to determine an average hourly rate for all attorneys for the 132 hours.

---

**56.** If compensated at the reasonable hourly rates used above, the hourly rate would average $67.02 for these services.

**57.** Given the type of work done in the categories involving fully compensable time, we think this assumption is reasonably accurate.

From our calculations in the margin,[58] it would appear that $80 per hour is a reasonable figure to apply to the 132 hours. We compute petitioner's fees to be $12,900. We can see no reason to make any adjustment in this award for the quality of work performed. Petitioner should also receive $438.00 for costs and expenses.

*Blum, Haimoff, Gersen, Lipson & Szabad*

This firm is another joint petitioner with the Julien firm. Much of what we said about the Kass, Goodkind firm is also true of this petitioner. Most of its work was performed early in the litigation; it took little active role in the discovery proceedings outside of attendance at several meetings. As with the Kass, Goodkind firm, we have excluded all unnecessary review and analysis work.

We have separated out all time involving the preparing and drafting of the complaint, investigating the law and facts before the appointment of liaison counsel and qualifying its client as a class representative. We find that petitioner engaged in such efforts for 220.5 hours and we will compensate this at the $20 rate.

Petitioner is also entitled to compensation for the following work by three of its attorneys:

| Name | Year Admitted | Hourly Rate | Hours | Value |
|---|---|---|---|---|
| Louis Haimoff | 1933 | $100 | 69 | $ 6,900.00 |
| Joseph Greenberger | 1962 | 80 | 188.5 | 15,080.00 |
| George Stiefel | 1972 | 40 | 12 | 480.00 |

We do not believe that any adjustment in the above hourly compensation should be made based on the quality of work performed. The total fees to which petitioner is entitled are $26,870. Petitioner will be reimbursed an additional $1,557.60 for expenses incurred.

*Bachner, Tally & Mantell*

This firm is the last of the joint petitioners in the Julien & Schlesinger petition. Like the others, it filed suit on behalf of a client who held stock in the Holding Company.

A review of petitioner's efforts shows a total of 134.5 hours spent on investigating the law and facts, drafting the complaint, and working on its client's role as class representative. From this total we delete 66 hours as those fairly allocable to work on the derivative aspects of the case. As with the other attorneys for the stockholders,

petitioner will receive $20 per hour for the remaining 68.5 hours.

Beyond the above, the vast majority of petitioner's efforts consisted of "review and analysis." Petitioner's active participation was for the most part confined to attendance at various meetings. While we will compensate the latter, we have deleted all time in the former category. This work was unnecessary and not of any benefit to the class.

We find the compensable hours worked by petitioner and a reasonable hourly rate therefor as follows:

We do not believe that the resulting figure, $18,430, should be adjusted for the quality of work performed. Petitioner will also receive $1,321.00 in reimbursement for expenses.

58. Four attorneys spent significant time on this case for petitioner. We list their names, year of admission to the bar, time worked and a reasonable hourly rate for their services.

| Name | Year Admitted | Hourly Rate | Hours |
|---|---|---|---|
| Stuart Wechsler | 1958 | $100 | 219 |
| Michael Fuchs | 1969 | 60 | 25.25 |
| Ronald Shindler | 1972 | 40 | 33 |
| Clark Marcus | 1968 | 60 | 53.50 |

A mathematical average for the above is $84.49. We will use $80 because of the possibility of error, and because as between petitioner and the class, petitioner should assume the burden of any error because it was its petition which was not sufficiently complete to enable a more accurate accounting. *See* note 66 *infra*.

| Name | Year Admitted | Hourly Rate | Hours | Value |
|------|---------------|-------------|-------|-------|
| Seymour Mantell | 1938 | $100 | 116.5 | $11,650.00 |
| Richard Penn | 1960 | 85 | 19 | 1,615.00 |
| Paul Gelbard | 1953 | 85 | 23 | 1,955.00 |
| Douglas Auster | _ [59] | 40 | 24 | 960.00 |
| Kenneth Schlesinger | _ | 40 | 22 | 880.00 |

### Lipper, Lowey & Dannenberg

Petitioner requests $28,550 in counsel fees for its efforts on behalf of the Holding Company stockholder class. It initially filed a complaint entitled *Lowey v. Bevan.* The complaint asserted both direct claims and derivative claims on behalf of the Holding Company.

Petitioner makes much of the fact that its clients were purchasers rather than mere holders. While it is true that given our subsequent ruling [60] it was necessary to have a purchasing or selling class representative to assert rule 10b–5 claims, we are unable to see how the fortuitous position of petitioner's client makes the work of petitioner any more valuable. As petitioner recognizes, at least one other action had a purchasing plaintiff,[61] and a number of purchasers were later added as plaintiffs.

Petitioner has included a list of all services performed, the date and the number of hours involved. It is safe to say that petitioner did not play a major role in this litigation. The extent of its activity in moving this litigation forward was quite limited. Nevertheless, petitioner did perform some services which were of benefit to the class and which should be compensated. After we deduct time spent on the derivative action, petitioner has detailed a total of 16.5 hours in drafting and investigating the facts underlying the complaint. There were also 16.5 hours spent in representing its clients in their representative capacity. This time will be compensated at $20 per hour.

In addition, petitioner spent some time on discovery, primarily in reviewing documents of the Holding Company, on a motion to substitute executors for one of the defendants who died during the pendency of this action and on defendants' motion for summary judgment. Petitioner has not included any time spent in reviewing documents served or filed in this action, and, given the limited extent of its participation in this case, properly so.

After deleting noncompensable time,[62] we find the following to constitute reasonable hourly compensation for the hours worked by petitioner:

| Name | Year Admitted | Hourly Rate | Hours [63] | Value |
|------|---------------|-------------|------------|-------|
| Richard Dannenberg | 1956 | $80 | 145.6 | $11,648.00 |
| Stephen Lowey | 1959 | 80 | 17.5 | 1,400.00 |
| Gerald Segal | 1967 | 50 | 6.5 | 325.00 |

The resultant figure for the efforts of petitioner is $14,033. As far as we are able to tell, the quality of petitioner's work merits neither an increase nor a decrease. Peti-

**59.** Unfortunately, petitioner has not included this information, and we are unable to ascertain it. The hourly figure used assumes a recent admission. *See* note 66 *infra.*

**60.** *See* text following note 5 *supra.*

**61.** *Baron v. Saunders,* C.A. No. 70–2596.

**62.** *See* text accompanying notes 19–26, *supra.*

**63.** Because petitioner did not keep complete time records, it is asked that we increase the hours detailed by 10% to account for hours worked but not recorded. We have included hours which petitioner has estimated were worked. We refuse to add an additional 10% which cannot be substantiated because of petitioner's inadequate time records. The failure to keep accurate time records is a factor which the court is entitled to take into account. *See Blank v. Talley Industries, supra* at 4.

tioner shall also be reimbursed $1,565.78 for expenses.

### Ira Jay Sands

Petitioner is another of the many counsel who represented stockholders of the Holding Company. In detailing its efforts, petitioner broke the work down by broad categories. Because petitioner did not adequately respond to our request for a supplemental affidavit, we have made certain estimates in determining how the work in certain categories was allocated.[64]

Petitioner's complaint included derivative claims on behalf of the Holding Company. We will allocate, and delete, one-third of all hours worked before December, 1971, when the Holding Company was realigned and given control of these claims. Petitioner has not specifically detailed any affirmative activities in which it engaged after the appointment of liaison counsel, and we are aware of none. Consequently, we will delete all "received and reviewed" time.

After careful study of the petition and supplementary affidavit, our best estimate is that petitioner spent a total of 174.7 compensable hours on drafting the complaint and investigating the underlying facts and law before the appointment of liaison counsel. As with all other stockholder counsel, this work will be compensated at $20 per hour. In addition, petitioner has detailed the following hours which are fully compensable:

| Name | Years Practicing | Hourly Rate | Hours | Value |
|---|---|---|---|---|
| Ira Sands | 30 | $100 | 58 | $5,800.00 |
| James Geller | 10 | 60 | [65] | |
| Harold Webb | 8 | 60 | 18 | 1,080.00 |

The total for petitioner's work, including complaint and investigation time, is $10,374. Though on the basis of petitioner's supplementary affidavit we are tempted to reduce this figure for the quality of work performed, we will not. Petitioner will be reimbursed for expenses of $2,345.00.

### Ostroff & Lawler

Petitioner represented Edward Perry, a stockholder of the Holding Company. The petition has detailed the services, date performed and amount of time spent involved in this case. A review of this time reveals practically no active participation by petitioner after it filed the complaint on behalf of Mr. Perry. Indeed, at the hearing held on the fee petitions, Mr. Lawler characterized petitioner's role as one of standing and waiting for assignments. Almost all of the time detailed was spent on reading and reviewing documents which were filed during the course of this litigation. In light of this, we believe that petitioner's efforts in reading and reviewing were of no benefit to the class, and should not be compensated. A careful review reveals no time detailed in the petition for drafting of the complaint or investigating the underlying law and facts. Without this, there appears to be no compensable time that petitioner worked, and we will deny its petition for fees *in toto*.

### Wolf, Popper, Ross, Wolf & Jones

This firm has filed a joint petition with Ostroff & Lawler.

An examination of the petition and the record satisfies us that petitioner, like Ostroff & Lawler, played a very minor role in this litigation. It has, however, detailed certain efforts for which it is entitled to compensation.[66] Petitioner has detailed a

**64.** *See* note 66 *infra*.

**65.** Because petitioner has not distinguished how many hours were worked by each attorney, it is necessary for us to lump them together. In determining an hourly rate to be applied for the combined time, we used the lower fig-

ure which would be applicable to Webb's time. *See* note 66 *infra*.

**66.** Unfortunately the petition was not as detailed as we would have preferred with respect to the time spent on various activities. Petitioner in describing the hours worked lumped

total of 136 hours spent on investigation and drafting of the complaint and in pursuing the class action issue with its client. In response to our request, petitioner has, in its supplemental affidavit, estimated that one-half of this time was spent on derivative claims and one-half on the direct claims. Accordingly, petitioner is entitled to $1,360 for 68 hours of work at $20 per hour.

Petitioner has also detailed some small amounts of time which we feel should be compensated at reasonable hourly rates. Deleting all hours spent in reading and reviewing papers (because its active participation after the appointment of liaison counsel was essentially nil) we find petitioner entitled to remuneration for hours as follows:

| Name | Year Admitted | Hourly Rate | Hours | Value |
|------|---------------|-------------|-------|-------|
| Benedict Wolf | 1928 | $100 | 17.75 | $1,775.00 |
| Philip Jones | 1937 | 100 | 12 | 1,200.00 |
| Howard Jacobs | 1960 | 85 | 1 | 85.00 |
| Arnold Gershon | 1964 | 75 | .75 | 56.25 |
| Lester Levy | 1967 | 65 | 1 | 65.00 |

The resultant figure, including compensation for discounted time, is $4,541.25. No adjustment will be made for the quality of work performed. Petitioner will also receive $475.82 for costs and expenses.

### Brooks, Tarlton, Gilbert, Douglas & Kressler

Petitioner has prosecuted the GSC derivative claim portion of this litigation. While its complaint initially stated direct class and antitrust claims, we dismissed these in 1973.[67] *In re Penn Central Securities Litigation,* 367 F.Supp. 1158 (E.D.Pa.1973).

■ In addition to a cash fund of $300,-000, petitioner has recovered a significant number of shares of common and preferred stock as well as the cancellation of certain unpaid dividends.[68] At the fee hearing petitioner claimed that the cost to the defendants in surrendering the stock and dividends is in the neighborhood of $10 million. Petitioner candidly conceded that these non-cash assets were of somewhat less value to GSC. And that, of course, is the relevant consideration in determining the benefit obtained by petitioner. Nevertheless, the conferral of a substantial non-cash benefit upon the corporation justifies an award of counsel fees. *See Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 392–97 (1970); *Bailey v. Meister Brau, Inc.,* 378 F.Supp. 883, 885–86 (N.D.Ill.1974).

We will not attempt to place a dollar value on the stock surrendered to GSC. By far the largest share of stock was surrendered by Pennco which already owns some ninety percent of the stock of GSC. The value of the cancellation of accrued but unpaid dividends is also very uncertain, and we, given our limited expertise, are in a particularly poor position to evaluate it, if indeed anyone could. We recognize that the surrenders and cancellation were of some value to GSC, but we will leave it at that.

Petitioner spent a total of 2398.4 compensable hours in prosecuting this action. We

together all time in a certain chronological period, some of which might have been compensable, some not. We have estimated which was based on what knowledge we have. However, since petitioner has the obligation to present this court with a complete, detailed and accurate petition, *see Dorfman, supra,* 70 F.R.D. 366 at 374, where we had doubts they were resolved against the petitioner.

**67.** While this is probably a case where the hours spent on the class and antitrust claims should be deleted, *see* text accompanying notes 19–22, *supra,* we have determined not to bother since it involves a very small number of hours. This is in large part because of the overlap between the two causes of action.

**68.** *See* text following note 6 *supra.*

list below the attorney involved, year of admission to the bar, number of hours worked, a reasonable hourly rate and a value for the time.

| Name | Year Admitted | Hourly Rate | Hours | Value |
|------|------|------|------|------|
| Ben Douglas | 1967 | $60 | 1348.6 | $80,916.00 |
| Daniel Penner | 1967 | 60 | 722.2 | 43,332.00 |
| Randall Kressler | 1968 | 60 | 274.6 | 16,476.00 |
| Arch Gilbert | 1957 | 60 | 53 | 3,180.00 |

We compute $143,904 to represent compensation based on the number of hours expended by petitioner on this case. This constitutes almost 48% of the cash recovery of the GSC derivative action. In addition, fees will be allocated from the derivative fund to pay two other petitioning attorneys.[69]

Overall, we think the above figure represents fair and adequate compensation to petitioner for its efforts. Because non-cash assets were recovered we are not troubled by the relatively high percentage of fees awarded. On the other hand, given the uncertainty in the value of these assets, we think increasing the above figure would be unjustified. Petitioner will also receive $21,512.88 for costs and expenses.

*White, McElroy, White, Sides & Rector*

Petitioner represented a number of plaintiffs who were stockholders of GSC. We certified this case to proceed as a class action, *In re Penn Central Securities Litigation,* 62 F.R.D. 181 (E.D.Pa.1974), and since that time petitioner has served as class counsel. Since petitioner was the only law firm acting in this capacity, there is no need to discount any hours because of duplication.

Petitioner was detailed hours worked by three lawyers on this case. We have deleted a small percentage of these because they fall into one or another of the noncompensable categories mentioned previously. The resulting hours and a reasonable hourly rate for the attorneys involved are:

| Name | Year Admitted | Hourly Rate | Hours | Value |
|------|------|------|------|------|
| Tom McElroy | 1949 | $75 | 1366 | $102,450.00 |
| Donald Rector | 1967 | 40 | 10 | 400.00 |
| Peveril Settle | 1973 | 40 | 1814 | 72,560.00 |

Petitioner has also requested compensation for services in connection with the settlement administration. It has detailed some 135 hours so engaged. We will compensate petitioner at the rate of $40 per hour for this time. The total compensation for all services of petitioner based on hourly charges amounts to $180,810. This represents only 18.1 percent of the class recovery. And even when the "off the top" fees which are allocable to the class are added in, the fees total only 19.3 percent of the recovery.

On the other hand there are a couple of factors which militate against increasing the present figure. Much of the work performed by petitioner appears to have taken substantial time. While we have no doubt that counsel actually worked these hours, we are inclined to think that the pace was far from frenetic. We say this not about all of petitioner's time, but a review of its petition reveals more than a few casual examples. Also, counsel made several trips to Philadelphia in the course of their representation. We have included this time at the full hourly rates, but at least as to this time we think it would be improper to apply a multiplier.

After weighing all of the above, we think the most just solution is to increase petitioner's base compensation figure of $175,-

**69.** David Berger, P.A., is entitled to a sum of $1,043.64 from the derivative fund for services as liaison counsel. In addition, petitioner Modell, Pincus, Hahn & Reich will be paid a sum of $2,654.16 from this fund. *See infra.*

410 by an additional 15%. The total fee to be awarded petitioner is thus $207,121.50. Petitioner has also detailed $10,777.24 in costs and expenses for which it is entitled to reimbursement.

### Akin, Gump, Strauss, Hauer & Feld

This law firm served on the claims review committee with White, McElroy. It details 48.75 hours spent in this work. We find the figure of $40 per hour a reasonable one for this work; petitioner is entitled to $1,950 plus $296.73 in expenses.

### Modell, Pincus, Hahn & Reich

█ This petition represents a somewhat unusual problem. Petitioner represented Mayer Reich and filed a complaint asserting only derivative claims. When we invested the Transportation and Holding Companies with sole control over the derivative aspects of this suit, *In re Penn Central Securities Litigation,* 335 F.Supp. 1026 (E.D.Pa.1971), all derivative actions were dismissed. *In re Penn Central Securities Litigation,* 347 F.Supp. 1327, 1331 n. 2 (E.D. Pa.1972), *aff'd,* 494 F.2d 528 (3d Cir. 1974).

Thus, since December, 1971, petitioner has represented no client in this litigation. The explanation which petitioner has offered, that it was requested to perform these services by the steering committee, is not a complete answer to the doubtful propriety of continuing to participate in this lawsuit without a client.

On the other hand, there appears little doubt that petitioner invested considerable time and effort in this action, and that these efforts did result in benefit to all five of the plaintiff entities. Petitioner pursued discovery against defendant Peat, Marwick, Mitchell & Company. It expended nearly 1,500 hours in depositions, in obtaining documents and in settlement negotiations. Peat, Marwick was a very substantial contributor to the global settlement fund. Indeed, the Trustees of the Transportation Company have acknowledged the services performed by petitioner and agreed that on the question of petitioner's receiving any fee *vel non,* it should be paid.[70]

Given this background, we candidly admit that we have mixed feelings concerning the present petition. The power of this court to consider impropriety on the part of counsel is not in doubt. *See Blank v. Talley Industries, Inc.,* 390 F.Supp. 1, 7 (S.D.N.Y.1975) (dicta); *Cf. Baglini v. Pullman, Inc.,* 412 F.Supp. 1060 (E.D.Pa.1976). Without a fuller knowledge of the facts and a better grasp of the dynamics involved, we think our wisest option is not to impose monetary punishment upon petitioner by withholding earned fees for what appears to be a transgression of form.[71] Thus, we will award those fees to petitioner which it would otherwise be entitled to.[72]

Petitioner, for the reasons already expressed above, is not entitled to compensation for efforts with respect to the derivative action which it filed. Petitioner has set out the following hours spent in prosecuting the action against Peat, Marwick: We will not make any adjustment in the hourly compensation figure. Petitioner will

| Name | Year Admitted | Hourly Rate | Hours | Value |
|---|---|---|---|---|
| Pace Reich | 1954 | $ 75 | 930 | $69,750.00 |
| Judith Eichen | 1973 | 40 | 449.5 | 17,980.00 |
| Edwin Pincus | 1949 | 100 | 55 | 5,500.00 |
| Allen Dubroff | 1969 | 55 | 10 | 550.00 |

**70.** The Trustees do dispute the amount of fees which petitioner seeks.

**71.** *See Simon, Class Actions—Useful Tool or Engine of Destruction,* 55 F.R.D. 375 (1972); *Shields v. First National Bank,* 56 F.R.D. 442, 445 n. 4 (D.Ariz.1972); *Free World Foreign Cars, Inc. v. Alfa Romeo,* 55 F.R.D. 26, 30 & n. 14 (S.D.N.Y.1972); *In re Goldchip Funding Co.,* 61 F.R.D. 592, 594–95 (M.D.Pa.1974).

**72.** We doubt very seriously whether we would react the same way should this or a similar situation ever arise in the future.

receive $93,780 plus $5,852.08 for costs and expenses.

The above award will be taken "off the top" of the total settlement fund. Petitioner's efforts were not directed on behalf of any one plaintiff entity; rather it pursued the litigation generally against a single defendant—Peat, Marwick.

### Blank, Rome, Klaus & Comisky

Petitioner seeks our approval for an award of $1 million from the $4 million recovery of its client, the Trustees of the Transportation Company. Although the Trustees' action was not a derivative action, and although the relationship between petitioner and the Trustees is apparently that of attorney-client, the Trustees have no objection to our determining what a proper fee would be.

Nevertheless, under the circumstances, we think it would be totally improper and inappropriate for us to take any action with respect to the fees to be paid petitioner.

First of all, the Trustees are in a far better position than we are to determine what remuneration petitioner is reasonably entitled to. The proposition that a client and his or her attorney should agree on the proper fee to be paid is axiomatic.

Beyond this, any determination by us as to a reasonable fee would be, if not in a constitutional sense, at least literally, purely advisory. Section 77(c)(2) of the Bankruptcy Act, 11 U.S.C. § 205(c)(2)[73] requires the Interstate Commerce Commission to give its approval of the compensation to be paid petitioner for its efforts in this case. *See Matter of Reading Co.,* 524 F.2d 324 (3d Cir. 1975). The statute also requires the approval of the reorganization judge for any such payments. Thus, any determination by us would have no effect; it would merely be a semi-informed opinion by a part-time observer. We will deny petitioner's request for the reasons stated.

We summarize below the fees and expenses awarded and the allocation thereof:

| Petitioner | Fees | Expenses | Allocation |
|---|---|---|---|
| David Berger, P.A. | $515,946.35 | $34,713.60 | Holding Co. stockholders |
| | 36,875.00 | | Entire fund |
| | 11,037.78 | | Holding Co. |
| Nemser & Nemser | 50,000.00 | 1,900.27 | Holding Co. stockholders |
| Julien & Schlesinger | 147,557.50 | 6,652.49 | Holding Co. stockholders |
| Kass, Goodkind, Wechsler & Gersten | 12,900.00 | 438.00 | Holding Co. stockholders |
| Blum, Haimoff, Gersen, Lipson & Szabad | $ 26,870.00 | $ 1,557.60 | Holding Co. stockholders |
| Bachner, Talley & Mantell | 18,430.00 | 1,321.00 | Holding Co. stockholders |
| Lipper, Lowey & Dannenberg | 14,033.00 | 1,565.78 | Holding Co. stockholders |
| Ira Jay Sands | 10,374.00 | 2,345.00 | Holding Co. stockholders |
| Ostroff & Lawler | 0 | | |
| Wolf, Popper, Ross, Wolf & Jones | 4,541.25 | 475.82 | Holding Co. stockholders |

**73.** The relevant language provides:

"The judge shall in his discretion confirm the appointment of such legal counsel for the trustees as they shall select, with power of removal. The trustee or trustees and their counsel shall receive only such compensation from the estate of the debtor as the judge may from time to time allow within such maximum limits as may be approved by the Commission as reasonable."

| Petitioner | Fees | Expenses | Allocation |
|---|---|---|---|
| Brooks, Tarlton, Gilbert, Douglas & Kressler | 143,904.00 | 21,512.88 | GSC derivative |
| White, McElroy, White, Sides & Rector | 207,121.50 | 10,777.24 | GSC class |
| Akin, Gump, Strauss, Hauer & Feld | 1,950.00 | 296.73 | GSC class |
| Modell, Pincus, Hahn & Reich | 93,780.00 | 5,852.08 | Entire fund |
| Blank, Rome, Klaus & Comisky | 0 | | |
| Transportation Company Trustees | | 52,859.22 | Entire fund |