**Thomas B. BAILEY, Plaintiff,**

v.

**MEISTER BRAU, INC., et al.,
Defendants.**

**No. 69 C 1938.**

United States District Court,
N. D. Illinois, E. D.

June 5, 1974.

Donald Page Moore, Arthur W. Hahn, Pope, Ballard, Shepard & Fowle, Chicago, Ill., for plaintiff.

George W. Hamman, Mayer, Brown & Platt, Roger Pascal, Schiff, Hardin & Waite, Richard Mueller, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McLAREN, District Judge.

This matter is before the Court on the application of the plaintiff for an allowance of attorneys' fees, costs and expenses. For the reasons set forth below, an award of $50,000 will be granted to the plaintiff for attorneys' fees, costs of $19,094.68 will be taxed, and $27,339.90 will be awarded to plaintiff as litigation expenses.

This action was brought for violations of 15 U.S.C. § 78j(b), SEC Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, 15 U.S.C. § 77q(a), and for the common law tort of intentional interference with plaintiff's contractual relations.[1] Count 1 was brought as a derivative suit alleging a conspiracy between the defendants to defraud the Black Company and Bailey. In *Bailey I*, this Court found some of the defendants liable for the Securities Acts' violations.

---

1. See this Court's Memorandum Opinion and Order of September 27, 1973 (*Bailey I*) for a full recitation of the facts of this case and the Court's findings.

The Court did not award damages under that count since one of the wrongdoers, Meister Brau, Inc. (M–B) is the owner of the majority of shares of the Black Company [2] and the Court believes that this would unjustly enrich M–B. See *Bailey I* at 877.

The Court did provide, however, that in exercising its discretion, it would consider granting an award of attorneys' fees and litigation expenses. See *Bailey I* at 882–883. Plaintiff's attorneys, Donald Page Moore, Arthur Hahn, and the firm of Pope, Ballard, Shepard and Fowle,[3] have presented affidavits setting out their fees and expenses. Briefs have been presented and a formal hearing has been waived. The following will constitute the Court's findings on the issues before it.

In their application, plaintiff's attorneys seek $389,809 in fees, based upon 8,926 hours of work, $19,094.68 in taxable costs, and $79,723.51 in litigation expenses, or a total award of $488,627.07.[4]

In determining the number of compensable hours expended by counsel, two breakdowns are required. First, it is necessary to allocate the hours expended between Count 1 and Count 3, since only those hours reasonably expended on Count 1 may be compensable. Plaintiff's counsel reviewed their timesheets and broke down the hours into three categories. First, there was time spent solely on Count 3. Second, there was "mixed time," which was time spent on Counts 1 or 3, but could not be separated. Third, there was "derivative time," which was time expended for Counts 1 and 3, which could not be apportioned, and which was claimed necessary for both counts. Plaintiff's application seeks reimbursement for the "derivative time" only.

The second breakdown is an allocation of the total time between partners, associates and paralegals. A stipulation was entered into between the parties setting the hourly rate for partners at $55, the hourly rate for associates at $40, and the hourly rate for paralegals at $15. These are reasonable rates for attorneys practicing in Chicago. Based on these rates, the firm's partners expended 3,711.10 hours, for a fee of $204,110.50; the associates expended 4299 hours, for a fee of $171,960;[5] and the paralegals expended 915.9 hours, for a fee of $13,738.50. Defendants do not disagree that the hourly rate is reasonable or that, in fact, the number of hours claimed was expended. As discussed later, they take issue with the allocation of the hours among the counts.

I.

Defendants first contend that plaintiff's counsel should not be awarded any fees, as the action under Count 1 was merely a device to obtain federal jurisdiction, no damages were awarded and relief was only sought for Bailey. In *Bailey I,* at 882–883, the Court stated the reasons why an award would be appropriate. Compare Walker v. Columbia Broadcasting System, Inc., 443 F.2d 33 (7th Cir. 1971). The mere fact that a monetary award may not be recovered does not preclude an award. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 392–397, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). So long as a benefit is conferred, attorneys' fees may be awarded.

---

2. The Black Company had 70,000 shares outstanding. M–B owns 67,000 shares (95.7%) and Bailey owns 3,000 shares (4.3%).

3. Plaintiff was also represented by the firm of Nachman, Munitz & Sweig. Their work was limited to Count 3, under which no award of attorneys' fees will be made.

4. Plaintiff's attorneys originally sought a total award of $490,884.57. Amendments to its original petition consisted of the following: the amount of attorneys' fees requested was increased from $389,739 to $389,809 due to computation errors. The amount requested, as a taxable cost, for court reporter fees was reduced from $15,800.00 to $13,472.50.

5. The firm's associates devoted many more hours to the derivative time; however, the firm made a percentage reduction in the number of hours based upon the experience and input of each associate.

See *id.*; Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970); White v. Auerbach, 363 F.Supp. 366 (S.D.N.Y.1973). As the Supreme Court stated in *Mills*:

"Where an action by a stockholder results in substantial benefit to a corporation he should recover his costs and expenses * * * [A] substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest."

396 U.S. at 396, 90 S.Ct. at 627, quoting Bosch v. Meeker Cooperative Light and Power Ass'n, 257 Minn. 362, 366–367, 101 N.W.2d 423, 425–427 (1960).

 In determining an award of attorneys' fees, two conflicting policies must be reconciled. First, there is the policy which views fees as an incentive to bring actions which might otherwise not be brought and which seeks to encourage vindication of legal rights and federal law. See Milstein v. Werner, 58 F.R.D. 544, 549 (S.D.N.Y.1973). The other policy is that fee awards not be so excessive or so freely granted as to encourage strike suits. See *id.*; *cf.* Newmark v. RKO General, Inc., 332 F. Supp. 161 (S.D.N.Y.1971). In achieving a balance between these policies, various factors are to be considered. These factors include the amount recovered for the corporation or the benefit to it, the time fairly required to be spent on the case, the skill required and employed, the difficulty in unearthing facts, the prevailing rate of compensation, the contingent nature of the fee, the benefits to the public, and the novelty and difficulty of the questions involved. See Angoff

v. Goldfine, 270 F.2d 185, 188–189 (1st Cir. 1959); Milstein v. Werner, 58 F.R. D. 544, 549–550 (S.D.N.Y.1973); see generally 3B J. Moore, Federal Practice, ¶ 12.1.15 et seq., at 23.1–451 (2d ed. 1974). Of these factors, the most important is the benefit conferred upon the corporation. See Milstein v. Werner, *supra,* 58 F.R.D. at 550. Furthermore, one should look to the benefit conferred upon the entire corporation. See Newmark v. RKO General, Inc., 332 F. Supp. 161 (S.D.N.Y.1971); Schleiff v. Biggers, 64 Civ.No. 3855 (S.D.N.Y. 1967); United States v. Moulton & Powell, 188 F.2d 865, 870 (9th Cir. 1951) (dicta).

Plaintiff contends that the benefit conferred upon Black Co. would have been its value, or $1,097,000, but for the complicity of M–B. In its prior opinion, this Court found that the value of the Black Co. was as above, and the value of the M–B shares transferred for it was $451,000. M–B became bankrupt prior to trial and plaintiff claims that the value of its shares was zero. Defendant contends that the only benefit of Count 1 was for Bailey and that that benefit should be valued at no more than $50,-000. Plaintiff reminds the Court that until M–B went bankrupt in 1972, he sought an injunction to rescind the sale. It is necessary at this point also to remember that effectively there were only two shareholders; M–B (95.7%) and Bailey (4.3%). None of the other parties who sold shares to M–B complained of the exchange.

██ Determining what the benefit would have been to Black Co.[6] is not an easy problem. Clearly, the benefit should not be measured solely by Bailey's personal gain. If the Court were to accept plaintiff's view that the value of Black Co., or $1,097,009, was the val-

---

6. If one were, in a vacuum, to determine the amount of loss to Black Co., it would be the difference between the fair value of what the seller received and the fair value of what he would have received had there been no fraud. See Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 155, 92

S.Ct. 1456, 31 L.Ed.2d 741 (1972). In the instant case, that would appear to be the difference between the value of the corporation shares, or $1,050,000, and the value of the stock used as payment at that time, $451,000.

ue of the benefit, the requested fees would seem clearly excessive. Plaintiff seeks almost $500,000 in compensation when the total possible benefit could be deemed, at most, slightly over $1 million. A "rule of thumb" has fixed the appropriate percentage at 20%. See 3B J. Moore, Federal Practice, ¶ 231.25, at 23.1–453 (2d ed. 1974). The Court believes, however, that even this amount i. e., 20% of $1,097,009, would be excessive in this case.

Several cases have stated that a small net benefit to the corporation, caused by the wrongdoing of a large shareholder, will not impede the recovery of attorneys' fees based upon the entire potential recovery. See Schleiff v. Biggers, supra; Newmark v. RKO General, Inc., supra. Compare May v. Midwest Refining Co., 121 F.2d 431, 439–440 (1st Cir. 1941). However, where the benefit is modest, the Court can reduce the award appropriately. See Whittemore v. Sun Oil Co., 58 F.R. D. 624 (S.D.N.Y.1973). In the instant case, the facts are unique. The only minority shareholder was Bailey. One of the wrongdoers, M–B, owned the remainder of the shares. This was known at the outset of the suit. A realistic appraisal of the fund which might have been created would have indicated one considerably less than that which plaintiff saw. Although certain rights were vindicated, the Court does not believe that fees should be based upon the total theoretical recovery.

Reduction is also warranted when one considers the time fairly required and spent on Count 1. First, plaintiff has made no apportionment between Counts 1 and 3 of the derivative time. Counsel states that all of that time was necessary for both counts; however, the time spent might have been apportioned, for example, in relation to the benefit achieved. Further, the

amount of time and fees indicated, almost 9,000 hours and $400,000, is unreasonable when one views the value of the company. The Court, in analyzing the hours spent, also believes that too much time was devoted merely to ascertain the value of the company. This is not to say that counsel were not faced with difficult issues. The issues were difficult and did require considerable preparation. Counsel proved themselves extremely able and handled this litigation with the highest level of professional competence. The Court believes, however, that other factors are of more importance. In addition to the above, one must view the contingent nature of the litigation, and the fact that because of M–B's role, it was unlikely that a large fund would be created. For all of these reasons, the Court believes that a significant reduction is necessary. Under all the circumstances, the Court holds that the sum of $50,000 is a reasonable award for attorneys' fees.

## II.

Plaintiff seeks an award of costs, pursuant to 28 U.S.C. § 1920 and F.R.Civ.P. 54(d). Plaintiff first seeks $208.00 for fees to the clerk and for service of process. Defendant objects to $149.75 to a Charles Miles. Mr. Miles was used as a special process server. Under § 1920(1), fees to the marshal are appropriate. The Court believes that this was a reasonable expense and will allow it. Plaintiff also requests $13,472.50 in court reporter fees.[7] Defendants object to $3,356.57 of the deposition transcript because it was merely for discovery. The Court believes the expense was reasonably necessary and will tax the entire amount. See Federal Sav. & Loan Ins. Corp. v. Szarabajka, 330 F.Supp. 1202 (N.D.Ill.1971).

Plaintiff also seeks $493.36 in witness fees. Defendant states that cer-

---

7. Plaintiff originally sought $15,800 in fees. This was reduced because plaintiff sought reimbursement at the rate for daily copy which had been specially ordered, rather than the normal rate. See Farmer v. Arabian-American Oil Co., 379 U.S. 227, 234, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).

tain of the persons were not called to testify. The Court will award fees not only to those witnesses called, see 28 U. S.C. § 1920(3), United States v. Lee, 107 F.2d 522 (7th Cir. 1939), but also to the other potential witnesses since their testimony would have been relevant and material. See FSLIC v. Szarabajka, *supra* at 1208–1209.

### III.

 Plaintiff also requests certain litigation expenses, totalling $79,723.21. Plaintiff seeks $10,951.40 in fees for Professor Lorie; $52,849.81 in fees for Mr. Weed; $4,000 in fees for Brown, Coleman & Hale; $4,365 in fees for the Illinois Co.; $1,609 in telephone expenses; and $5,948 in travel expenses. Ordinarily, fees for experts are not taxed in excess of subsistence and travel. See, *e. g.,* Baum v. United States, 432 F.2d 85 (5th Cir. 1970); Hill v. Gonzalez, 53 F.R.D. 1 (D.Minn.1971). However, because of the nature of this particular case, and acting in its discretion, the Court will grant the request in its entirety as to Professor Lorie's fees. As for Mr. Weed, the Court does not believe that the expense is reasonable in light of the total value of the company, and the contingent nature of this case. The Court, therefore, will award plaintiff $10,000 in fees and $1,000 in expenses for Mr. Weed. As for Brown, Coleman and Hale, and the Illinois Co., the Court will award them 50% of the fees, or $2,000 and $2,182.50, respectively. The request for an award of telephone expenses is denied.

As for travel expenses. the Court does not believe that the attorneys' travel expenses should be taxed. See Hope Basket Co. v. Product Advancement Corp., 104 F.Supp. 444 (W. D.Mich.1952); 6 J. Moore, Federal Practice, ¶ 54.77 [8], at 1377 (2d ed. 1974). Two sums, $156.00 and $1,050, were expended for the travel expenses of deponents and witnesses, Harold Noble and Bernard Berry, and the Court will allow these to be taxed. Also, the motel expense of $49.75 for the deposition of

Mr. Weaver will be allowed. The total litigation expenses allowed equal $27,339.90.

It is so ordered.