Wilburn G. **CAGLE** et al.

v.

J. D. **COX** et al.

**Civ. A. No. 79–0515–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Aug. 11, 1980.

---

1.  Plaintiffs make no claim that defendant either knew of or participated in the perjury.

Alexander H. Slaughter, and Thomas M. Wolf, Richmond, Va., for plaintiffs.

James E. Kulp, Deputy Atty. Gen., Guy W. Horsley, Jr., Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM AND ORDER

WARRINER, District Judge.

### I

On 28 May 1980 plaintiffs moved the Court for an order authorizing the expenditure of funds to enable plaintiffs to retain expert witnesses for the purpose of inspecting the Powhatan Correctional Center, advising counsel and testifying at trial with regard to plaintiffs' claims of overcrowding, pervasive physical violence, unsanitary conditions, and inadequate health care. More specifically, plaintiffs request authorization to retain the following expert witnesses: (1) Dr. David Fogel, University of Illinois at Chicago Circle, an expert on corrections and correctional facilities; (2) Dr. Stanley Brodsky, University of Alabama, an expert on correctional psychology; (3) Mr. Samuel Hoover, Arlington, Texas, expert on prison sanitation; and (4) Dr. Barbara Starrett, New York, N. Y., expert on prison health care. Plaintiffs estimate that the total cost of retaining these four experts will not exceed $7,000. In the alternative, plaintiffs move the Court for an order that plaintiffs' counsel may incur the above expenses and that the expenses will be taxable as costs at the conclusion of this action. Plaintiffs' motion is ripe for consideration.

### II

In *Moss v. ITT Continental Baking Co.*, 83 F.R.D. 624 (E.D.Va.1979), this Court recognized "[t]he general 'rule . . . that a court may not authorize the commitment of federal funds to underwrite the necessary expenditures of an indigent civil litigant's action.'" *Id.* at 625 (quoting *Haymes v. Smith*, 73 F.R.D. 572, 574 (W.D. N.Y.1976). Even though *Moss* involved a motion by court appointed counsel for reimbursement of certain expenses incurred by him in the representation of an indigent plaintiff, rather than a motion to authorize retention of expert witnesses, the Court believes that its ruling in *Moss* is controlling here. For the reasons set forth in *Moss*, plaintiffs' motion to authorize retention of expert witnesses is DENIED.

### III

In reaching the conclusion that this Court is not authorized to commit federal funds to underwrite the necessary expenses of an indigent civil litigant's action, the Court is not unmindful of the fact that indigents should have meaningful access to the courts. Meaningful access would, in many instances, include the ability to call expert witnesses. Of course, if expert witnesses could be called at the government's expense without risk to the indigent plaintiff (or his lawyer), indigents would have the ability to produce more experts than non-indigents. Accordingly, if indigents are permitted to call expert witnesses, there must be some risk involved to ensure that the demand will be reasonable.

This brings the Court to plaintiffs' alternative motion that the expenses incurred by plaintiffs in retaining expert witnesses should be taxable as costs against the losing parties at the conclusion of this action, pursuant to 28 U.S.C. § 1920(3) and Rule 54(d) of the Fed.R.Civ.P.

28 U.S.C. § 1920 provides in pertinent part as follows:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> .　　.　　.　　.　　.
>
> (3) Fees and disbursements for printing and witnesses;
>
> .　　.　　.　　.　　.

Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs; . . . ."

■ It is the general rule, nevertheless, that federal courts have no authority to tax as costs the compensation of expert witnesses in excess of the statutory attendance per day, mileage and subsistence allowances provided by 28 U.S.C. § 1821. *Henkel v. Chicago, St. P. M. & O. Ry.*, 284 U.S. 444, 447, 52 S.Ct. 223, 225, 76 L.Ed. 386 (1932); *Baum v. United States*, 432 F.2d 85, 86 (5th Cir. 1970). Despite the general rule

> [t]here is some intimation that the court in the exercise of its general equitable power may permit an additional allowance [for compensation of expert witnesses] to be taxed as costs, provided the court is satisfied that the situation is exceptional and the court makes an order to that effect prior to the expert being called.

6 Moore's Federal Practice ¶ 54.77[5.–3] at 2735 (2d Ed. 2976) (footnote omitted). In support of this position, Professor Moore cites *Department of Highways v. McWilliams Dredging Co.*, 10 F.R.D. 107 (W.D.La. 1950), *aff'd*, 187 F.2d 61 (5th Cir. 1951), in which the district court stated *in dictum*:

> There is no provision in the statutes, the Rules of Civil Procedure, or those of this court, which permits the indiscriminate summonsing of experts and the payment of such fees as they may see fit to charge. In cases where experts are *necessary*, counsel can protect its client's interest by *prior application to the court*, setting forth the nature and importance of the testimony of such witnesses, and upon contradictory hearing, the court may determine which ones shall be permitted and the fees to be paid therefor before they are incurred; otherwise this type of expense, which often runs into large figures, would be restrained only by the judgment of the particular counsel.

10 F.R.D. at 109 (emphasis added).

### A.

In reviewing the federal case law, the Court has found other decisions in which courts have taxed, or have recognized their equitable power to tax, expert witness fees as costs against the losing civil litigant, even though the fees exceed the allowance permitted by 28 U.S.C. § 1821, where the expense was necessary to the presentation of the prevailing litigant's claim and where there was prior court approval. In *Brooks v. Town of Sunflower*, Civil Action No. CG # 71–57–K (N.D.Miss. March 27, 1974) (unpublished Memorandum Opinion), involving an action against city officials alleging racial discrimination in the furnishing of services to the black community of the town,

the court overruled defendants' objection to the inclusion in plaintiffs' bill of costs of the fee for plaintiffs' expert in excess of the statutory travel and subsistence allowance. In overruling the objection, the Court concluded:

> that the service of a consultant engineer was an absolute necessity for the proper development of plaintiffs' case, since the subject matter was of a technical nature, completely beyond the knowledge of lay citizens. . . . While the allowance of a fee for an expert employed by adversary litigants is to be viewed with caution, it is our view that the presentation of plaintiffs' claims required the employment of a consultant engineer to review, analyze, and criticize the plans and technical data prepared by the professional engineers especially employed by the defendants. As it turned out, these plans needed certain modifications, which [plaintiffs' expert] recommended. It is equitable that his services be borne as a cost of the town's project.

In *Wade v. Mississippi Cooperative Extension Service*, 64 F.R.D. 102 (N.D.Miss. 1974), involving a similar objection to plaintiffs' bill of costs, the court distinguished the claim for expert fees before it from the claim for expert fees in *Brooks*. With respect to the claim in *Brooks*, the Court stated that:

> plaintiffs were wholly dependent upon technical engineering studies to contest successfully the sufficiency of the Town's plans for installing a new municipal sanitary sewer system, extending water lines and furnishing other municipal services. Obviously, lay testimony in such a case was inappropriate and it was indispensable for plaintiffs to obtain technical advice.

*Id.* at 105.

With respect to the claim for expert fees in *Wade*, the Court stated:

> no application was made in advance to the court for engaging these experts, whose testimony related entirely to statistical interpretations of certain records maintained by defendants. . . . Although the expert opinions were of probative value, evidence of this nature was simply an alternative and not an essential method of proving plaintiffs' case.

*Id.*

Accordingly, the Court refused to "depart from the customary rule of disallowing fees for experts who are employed by a party without prior sanction or approval of the Court." *Id.*

In *Welsch v. Likins*, 68 F.R.D. 589 (D.Minn.1975), a class action under 42 U.S.C. § 1983 was brought on behalf of the mentally retarded inmates committed to Minnesota State Hospitals, alleging that the inferior conditions of the hospitals violated their rights under the U. S. Constitution and under State statutes. *See Welsch v. Likins*, 373 F.Supp. 487 (D.Minn.1974). After finding for the plaintiffs on the merits, the court granted plaintiffs' post trial motion for taxation of their experts' fees as costs in the action. In reaching its decision, the Court stated:

> Although pretrial investigation expenses and expert witnesses fees are not taxed as a matter of course, 6 Moore's Federal Practice Para. 54.77[5.–3] at 1734 and Para. 54.77[8] at 1751, the Court has considerable discretion to award these fees when it feels they were particularly necessary under the circumstances of the individual case. *See Farmer v. Arabian Oil Co.*, [379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964)], and *Linneman Construction Inc. v. Montana-Dakota Utilities Co., Inc.*, [504 F.2d 1365 (8th Cir. 1974)]. . . . The court finds that these expert witnesses were an indispensable part of this trial. Their experience in governmentally operated programs for the retarded was clearly reflected in their testimony and added greatly to the Court's knowledge. This experience, coupled with their observation of the conditions at Cambridge, enabled the Court to fashion not only necessary but practical re-

quirements to relieve the conditions that exist there.

68 F.R.D. at 596–97.[1]

There is also some intimation that courts may permit the inclusion of expert fees as an item of costs when they are confronted with cases presenting exceptional circumstances. *See, e. g., Sperry-Rand Corp. v. A–T–O, Inc.*, 58 F.R.D. 132, 137 (E.D.Va. 1973) (dictum) ("If the Court does have power to assess such costs [for fees of expert witnesses], it is clear that it should do so only in exceptional circumstances . . . ."); 6 Moore's Federal Practice ¶ 54.77[5.–3] at 1735 (2d Ed. 1976) (footnote omitted). *See also Morris v. Carnathan*, 63 F.R.D. 374, 379 (N.D.Miss.1974) ("In the usual and ordinary case expert witness fees in excess of the statutory amount are not allowable as costs.")[2]

■ Thus, despite the general rule that a district court has no authority to tax as costs the compensation of an expert witness in excess of the statutory allowances established in 28 U.S.C. § 1821, the Court concludes, in light of the above authority, that it is not prevented from exercising its equitable discretionary authority in taxing as costs the fees of expert witnesses in excess of the statutory allowances where: (1) an expert witness is necessary to the presentation of a party's claim or the Court is confronted with exceptional circumstances; and, (2) the party has made prior application to the Court setting forth the nature and importance of the testimony of such experts; and (3) the expense is reasonable and not excessive.

Such an exception to the general rule seems particularly compelling in a case such as this where indigent plaintiffs are involved. Without the authority to tax expert witness fees as costs, the Court could not assure indigent plaintiffs the same access to the court and appropriate remedies available to plaintiffs who can afford to retain necessary expert witnesses. Defendants do not dispute the authority of the Court to tax as costs the fees of expert witnesses in the above circumstances; indeed, defendants cite authority for such an award. Rather, defendants submit that the instant case is not exceptional and that experts are not necessary to the prosecution of plaintiffs' claim.

B.

Having established the appropriate formula for taxing as costs the fees of an expert even though the fees exceed the allowances established in 28 U.S.C. § 1821, it is the function of the Court to apply this formula to the facts in this case. Initially, the Court should point out that it was due to the "exceptional circumstances" with respect to alleged conditions of plaintiffs' confinement in the dormitories at the Powhatan Correctional Center, that the Court appointed counsel to represent plaintiffs by order entered 9 November 1979. In addition to the exceptional nature of this case, the Court believes that expert testimony will be necessary to plaintiffs' counsel in presenting plaintiffs' claim and will certain-

---

1. See also Pizarro-de-Ramirez v. Grecomar Shipping Agency, 82 F.R.D. 327, 330 (D. Puerto Rico 1976). (dictum) (expert witness fees allowed where experts are necessary and upon prior application to the court); Bradley v. School Board, 53 F.R.D. 28, 44 (E.D.Va.1971) (class action seeking to end racial discrimination in the operation of public schools, held, "[i]t is difficult to imagine a more necessary item of proof (and source of assistance to the Court) than the considered opinion of an educational expert.")

See generally, Worley v. Massey-Ferguson, Inc., 79 F.R.D. 534, 539–41 (N.D.Miss.1978) (discussing exceptions to the general rule that the district court has no authority to tax costs

for compensation of expert witnesses in excess of statutory allowances).

2. Plaintiffs rely on Bailey v. Meister Brau, Inc., 378 F.Supp. 883 (N.D.Ill.1974), in which the court stated:

Ordinarily, the fees for experts are not taxed in excess of subsistence and travel. . . . However, because of the nature of this particular case, in acting in its discretion, the Court will grant the request in its entirety as to [plaintiff's expert's] fees.

*Id.* at 888.

While the Court believes the reasoning in *Bailey* may be sound, unfortunately, this case was reversed on this point in Bailey v. Meister Brau, Inc., 535 F.2d 982, 986 (7th Cir. 1976).

ly be essential to the Court in reaching a just result.

■ Plaintiffs allege that the conditions of their incarceration constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. To prevail in this claim, plaintiffs must prove that the conditions at the Powhatan Correctional Center do not meet minimum acceptable constitutional standards. *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Specifically, plaintiffs intend to prove, *inter alia*, the following conditions: overcrowding, inadequate sanitation, unsanitary food service, inadequate lighting and ventilation, defective plumbing and heating systems, inadequate fire protection, lack of proper diagnostic and classification systems, pervasive idleness, lack of proper employment, educational, and recreational opportunities, pervasive fear of violence, inadequate security, and the long term psychological effects of prolonged incarceration under the inferior conditions at the prison.

■ To this end, plaintiffs wish to retain one expert on corrections and correctional facilities; one expert on correctional psychology; one expert on prison sanitation; and one expert on prison health care. In support of their request for expert assistance, plaintiffs' counsel have referred the Court to similar cases in which other courts have utilized and relied upon the testimony of experts from various fields of corrections, institutional health and sanitation, and correctional psychology.[3]

With the understanding that the experts to be engaged by the plaintiffs will have direct knowledge of the facts bearing upon the issues in this litigation and that their testimony will be more than statistical interpretations of certain records maintained and provided by defendants, the Court believes that such expert testimony will be indispensable to the plaintiffs' counsel in presenting this case and will be extremely helpful to the Court in evaluating plaintiffs' claim.

By their motion to authorize retention of expert witnesses, plaintiffs have complied with the requirement of prior application to the Court, setting forth the nature and importance of the testimony of the expert witnesses to be called. It remains then for the Court to determine whether the fees of the expert witnesses will be reasonable and not excessive under the circumstances of this case.

Plaintiffs estimate that the total cost of retaining four experts in the aforementioned fields is $7,000. This appears reasonable. The Court can prevent the expenses incurred from being excessive by placing a ceiling on the expenses at no more than that amount. To assure further that the actual expenses incurred by the plaintiffs will be reasonable, as well as to ensure that they will be necessary, the Court can reevaluate the matter at the conclusion of the case. Further, the Court can tax as costs the fees of expert witnesses against the losing party, pursuant to 28 U.S.C. § 1920(3). The risk that plaintiffs (or plaintiffs' counsel) may be ultimately liable for the expenses of the expert witnesses they engage should reassure defendants of good faith on the part of plaintiffs and their counsel in holding the expenses down to a reasonable level.

IV

Accordingly, plaintiffs' alternative motion that the Court tax as costs the fees of plaintiffs' expert witnesses is GRANTED as follows:

(1) Plaintiffs may engage the four named experts in the fields of corrections and correctional facilities, correctional psychology, prison sanitation, and prison health care;

---

**3.** See e. g., Battle v. Anderson, 564 F.2d 388, 394 (10th Cir. 1977); Ramos v. Lamm, 485 F.Supp. 122, 129 (D.Colo.1979); Palmigiano v. Garrahy, 443 F.Supp. 956, 960 (D.R.I.1977) ("The Court's task was made easier by the extensive assistance of experts from the vari-

ous fields of corrections, institutional environmental health and sanitation, and correctional psychology."); Laaman v. Helgemoe, 437 F.Supp. 269, 276, 278–303 (D.N.H.1977); Pugh v. Locke, 406 F.Supp. 318, 322 (M.D.Ala.1976), *aff'd as modified*, 559 F.2d 283 (5th Cir. 1977).

(2) the total cost of retaining such experts shall not exceed $7,000;

(3) the necessity and reasonableness of the retention of the experts as well as the fees incurred shall be subject to re-evaluation at the conclusion of the case; and

(4) the fees may be taxed as costs against the losing party at the conclusion of this action.

And it is so ORDERED.